## APPENDIX OF UNPUBLISHED OPINIONS

1. *Anthony v. Manges*, No. 1:23-cv-00067, 2025 WL 1385062 (W.D. Pa. 2025)

2. *Coit v. Wynder*, No. 1:22-cv-01277, 2023 WL 4278668 (M.D. Pa. 2023)

3. *Deluca's Auto Repair Inc. v. City of Hazleton*, No. 3:25-cv-00511, 2026 WL 852013 (M.D. Pa. 2026)

4. *Hickson v. Peco Energy Co.*, No. 25-cv-02980, 2025 WL 3678433 (E.D. Pa. 2025)

5. *McCartney v. Pennsylvania State Police*, No. 1:09-cv-1817, 2010 WL 2196429 (M.D. Pa. 2010)

6. *Taggart v. Deutsche Bank Nat'l Tr. Co.*, No. 20-cv-05503, 2021 WL 2255875 (E.D. Pa. 2021)

7. *Young v. Centerville Clinic, Inc.*, No. 09-cv-00325, 2009 WL 2448003 (W.D. Pa. 2008).

**1**

Case 3:26-cv-00879-JFS-DFB    Document 11-2    Filed 05/18/26    Page 3 of 62

Anthony v. Manges, Not Reported in Fed. Supp. (2025)

2025 WL 1385062
Only the Westlaw citation is currently available.
United States District Court, W.D. Pennsylvania,
Erie Division.

Brian Douglas ANTHONY, Plaintiff

v.

Todd MANGES, et al., Defendants

1:23-CV-00067
|
Signed March 5, 2025

**Attorneys and Law Firms**

Brian Douglas Anthony, Summerfield, FL, Pro Se.

Patrick M. Carey, Marshall, Dennehey, Warner, Coleman & Goggin, Erie, PA, for Defendants Todd Manges, Gary Seymour, Mark Lindsey.

REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS AND, ALTERNATIVELY, FOR SUMMARY JUDGMENT

ECF NO. 29

RICHARD A. LANZILLO, CHIEF UNITED STATES MAGISTRATE JUDGE

### I. RECOMMENDATION

**\*1** It is respectfully recommended that Defendants' motion to dismiss Plaintiff's Amended Complaint and, alternatively, for summary judgment (ECF No. 29) be denied to the extent it is based on Defendants' exhaustion affirmative defense and granted based on the Amended Complaint's failure to comply with Rule 8 and Rule 10 of the Federal Rules of Civil Procedure. It is further recommended that this action be dismissed without prejudice and that Plaintiff be provided the opportunity to file an amended complaint that complies with Rule 8 and Rule 10.

### II. REPORT

#### A. Relevant Procedural History

Plaintiff Brian Douglas Anthony ("Anthony"), an individual previously detained at the Erie County Prison ("ECP"), brings this action against Defendants Todd Manges, an Erie County Detective, Gary Seymour, a Deputy Warden at ECP, Mark Lindsey, an ECP Lieutenant, and yet-to-be-identified Jane/John Doe Defendants who work in ECP's mailroom. His Amended Complaint (ECF No. 21) is his operative pleading. Therein he asserts claims against Manges, Seymour, and Lindsey for false arrest and malicious prosecution. He apparently asserts a First Amendment or procedural due process claim against the Doe Defendants based on the interception of certain letters that he attempted to send from ECP. It is unclear whether he also asserts a mail-interception claim against Manges, Seymour, or Lindsay.

Defendants moved to dismiss and, alternatively, for summary judgment arguing (1) the Amended Complaint should be dismissed pursuant to Rule 8 of the Federal Rules of Civil Procedure; (2) Anthony failed to exhaust his administrative remedies under the ECP grievance process and, therefore, at least some of his claims are barred by the Prison Litigation Reform Act of 1996, 42 U.S.C. § 1997e(a); (3) ECP prison mail restrictions serve a penological interest; (4) the Court should abstain from exercising jurisdiction over Anthony's claim under the *Younger* abstention doctrine; (4) probable cause existed for Anthony's arrest and prosecution; and (4) qualified immunity bars Anthony's claims; (5) Anthony's defamation claims are barred by the statute of limitation; and (6) Anthony's demand for a specific sum of liquidated damages violates this Court's Civil Local Rule 8. *See* ECF Nos. 30, 32, 39. Defendants filed a concise statement of material facts in support of its request for summary judgment (ECF No. 32), and Anthony filed a responsive concise statement (ECF No. 51).

#### B. Discussion

1. Defendants' motion should be denied to the extent it is based on their exhaustion affirmative defense.

The Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a) (the "PLRA"), requires a prisoner to exhaust any available administrative remedies before he may bring an action challenging the conditions of his confinement. 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all claims relating to prison life which do not implicate the duration of the prisoner's sentence. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Failure to exhaust administrative remedies

Case 3:26-cv-00879-JFS-DFB    Document 11-2    Filed 05/18/26    Page 4 of 62

Anthony v. Manges, Not Reported in Fed. Supp. (2025)

under the PLRA is an affirmative defense that a defendant must plead and prove. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

 **\*2** In support of their exhaustion defense, the Defendants asserted that although Anthony filed a grievance regarding his mail-interception claim, he failed to appeal the denial of that grievance to final review. In contrast, Anthony asserted that he submitted a grievance, but ECP personnel refused to process it. Because exhaustion of administrative remedies presents a threshold issue that the Court must determine before reaching the merits of claims, *see Brown v. Sprenkle*, 827 Fed. Appx. 229, 231 (3d Cir. 2020), and because Anthony raised possible unavailability of administrative remedies, the undersigned conducted an evidentiary hearing to resolve the factual dispute. *See Small v. Camden County*, 728 F.3d 265, 270-271 (3d Cir. 2013); *Paladino v. Newsome*, 885 F.3d 203, 210 (3d Cir. 2018). A *Small* hearing is typically used to resolve issues of fact where a defendant has produced a record to support the plaintiff's procedural default such as his failure to complete the grievance process and the plaintiff has responded that some action or omission by the defendant rendered his or her grievance remedies "unavailable." *See Small*, 728 F.3d at 271 (holding "that judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury").

During the *Small* hearing, Anthony testified that he completed and submitted the proper grievance form regarding his mail-interference claim, but an ECP counselor later told him that prison administration said his grievance "wasn't going anywhere." He further testified that prison officials did not give him his copy of the grievance or otherwise indicate that ECP had any intention of processing his grievance. At the hearing, the Defendants acknowledged that ECP personnel refused to process Anthony's grievance and that, "[i]n fact, it probably went to a shredder." Defendants attempted to justify the refusal to process the grievance on the grounds that the grievance Anthony filed was not related to the reason he identified when he requested the grievance form. But nothing in ECP's grievance policy and procedures supported ECP's refusal to accept and process Anthony's grievance. *See* ECF No. 29-4, pp. 6-8 (Inmate Handbook/Grievance Procedure). Anthony's complaint that ECP personnel interfered with his mail raised "an alleged violation of ... constitutional ... right" as well as "an alleged violation of prison policy" and, thus, presented a subject concerning which ECP's grievance policy expressly authorized Anthony to file a grievance. *See id.*, p. 6. Anthony initiated the grievance process in accordance with

ECP policy. *See id.*, p. 7. This triggered ECP's obligations to accept, process, and respond to the grievance in accordance with its policy. ECP failed to do so. Instead, ECP treated Anthony's filing of the grievance as "a simple dead end." *See Ross v. Blake*, 578 U.S. 632, 643 (2016); *Rinaldi v. United States*, 904 F.3d 257, 266 (3d Cir. 2018). And in doing so, ECP made its on-the-books administrative remedies unavailable to Anthony. *Id.* Accordingly, to the extent Defendants' motion seeks summary judgment based on the defense that Anthony failed to exhaust his administrative remedies, the motion should be denied. As noted, however, Defendants' motion raises multiple alternative grounds for dismissal of the Amended Complaint. The Court need only address one such ground.

### 2. The Amended Complaint violates both Rule 8 and Rule 10 of the Federal Rules of Civil Procedure.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R. Civ. P. 8(a)(2). Rule 8(d)(1) provides that each allegation in a pleading "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Rule 8 "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented' ..." *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 n. 3 (2007). (quoting 5 C. Wright & A. Miller, *supra*, § 1202, p. 94, 95). Dismissal on Rule 8 grounds is "usually reserved for those cases in which the complaint is so confused, ambiguous, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). To merit dismissal, the complaint must be so confusing as to "overwhelm the defendant's ability to understand or to mount a response." *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004). Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice but must permit the amendment. *Denton v. Hernandez*, 504 U.S. 319, 325 (1989).

 **\*3** Federal Rule of Civil Procedure 10(b) provides:

> Paragraphs; Separate Statements. A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an

Case 3:26-cv-00879-JFS-DFB Document 11-2 Filed 05/18/26 Page 5 of 62

Anthony v. Manges, Not Reported in Fed. Supp. (2025)

earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b). "When a litigant—even a pro se litigant—fails to comply with Rule 10(b), the court may dismiss the complaint." *Acon-Chen v. Buttigieg*, 2024 WL 4416943, at *2 (D.D.C. Oct. 5, 2024) (citations omitted). The District Court in *Acon-Chen* explained:

Rule 10(b) ensures that a plaintiff breaks his or her complaint down into a series of discrete factual allegations, which the defendant must, in turn, admit or deny. When a plaintiff fails to comply with Rule 10(b), and instead combines his or her allegations in single, running narrative, the defendant is left at a loss with respect to how to answer. A general denial is permitted only when the defendant, in good faith, intends "to deny all the allegations of a pleading," Fed. R. Civ. P. 8(b)(3), a prospect that is seldom possible. And, in all other cases, the defendant must "either specifically deny designated allegations or generally deny all except those specifically admitted," *id.*, a prospect that is both daunting and riddled with potential pitfalls when the plaintiff fails to comply with Rule 10(b).

*Id.*

Anthony's Amended Complaint violates both Rule 8 and Rule 10(b). It does not represent a short and plain statement of the claim showing that Anthony is entitled to relief, and its allegations are neither simple, concise, nor direct. Although the Amended Complaint includes numbered paragraphs, none sets forth a single set of circumstances or discrete factual allegations. Some paragraphs span multiple pages. *See e.g.*, ECF No. 21, ¶¶ 25, 29. Many are argumentative rather than factual. Consequently, the Amended Complaint does not allow a response that would differentiate the facts in dispute from those that are not.

The Court can discern that Anthony's lawsuit relates to a disagreement concerning restrictions imposed upon him as part of a Pennsylvania state court sentence for violating a protection from abuse ("PFA") Order. Anthony acknowledges that on or about April 15, 2020, he was sentenced in

Pennsylvania state court to a term of incarceration of six months for violating the PFA Order and that the state court also ordered that Anthony have no contact with the victim, Kelly Harper, and that he not "send mail to the victim's address: 1024 Polk Street, Apt. #2, Erie, PA 16503." ECF No. 29-2. Anthony does not dispute that he sent and attempted to send numerous letters to the 1024 Polk Street, Apt. #2 address, but he contends that none of the letters violated the Court's sentencing order because none included Kelly Harper as the addressee. While Anthony's legal conclusions and argumentative allegations appear dubious, the procedural infirmity of his pleading is that its remaining allegations do not allow the Defendants to ascertain and respond to the factual basis for his claims against each Defendant. But it appears that Anthony may be able to cure the deficiencies of his Amended Complaint by further amendment.

### C. Conclusion

**\*4** For the foregoing reasons, it is recommended that the Court grant Defendants' motion to dismiss the Amended Complaint based on its failure to comply with Rule 8 and Rule 10 of the Federal Rules of Civil Procedure. It is further recommended that this action be dismissed without prejudice and that Anthony be given twenty days to file an amended complaint that complies with Rule 8 and Rule 10. If Anthony fails to file an amended complaint within the time allotted by the Court, it is recommended that the dismissal of this action be converted to a dismissal with prejudice.

### III. NOTICE

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, the parties may seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. *See* Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive appellate rights. *See Brightwell v. Lehman*, 637 F.3d 187, 194 n.7 (3d Cir. 2011); *Nara v. Frank*, 488 F.3d 187 (3d Cir. 2007).

**All Citations**

Not Reported in Fed. Supp., 2025 WL 1385062

**End of Document**                                              © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**2**

2023 WL 4278668
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Kevin Terrance COIT, Plaintiff

v.

WYNDER, et al., Defendants

No. 1:22-cv-01277
|
Filed June 29, 2023

**Attorneys and Law Firms**

Kevin Terrance Coit, Bellefonte, PA, Pro Se.

Phillip A. Michael, Office of Attorney General, Harrisburg, PA, for Defendants.

**MEMORANDUM**

Kane, Judge

**\*1** Pending before the Court is Defendants' motion to dismiss the complaint filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 12.) Also pending before the Court is pro se Plaintiff Kevin Terrance Coit ("Plaintiff")'s motion seeking the appointment of counsel. (Doc. No. 13.) For the reasons set forth below, the Court will grant Defendants' motion and deny Plaintiff's motion.

**I. BACKGROUND**

**A. Procedural Background**

Plaintiff, a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), is presently incarcerated at State Correctional Institution Rockview in Bellefonte, Pennsylvania. (Doc. No. 17.) He commenced the above-captioned action on August 16, 2022, by filing a complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983"), asserting violations of his constitutional rights while incarcerated at State Correctional Institution Frackville ("SCI Frackville") in Frackville, Pennsylvania. (Doc. No. 1.) Named as Defendants are six (6) individuals all of whom appear to be employed by the DOC and to have worked at SCI Frackville during the period of time relevant to Plaintiff's claims: (1) Wynder;

(2) Kephart; (3) Wentzel; (4) Wegrzynowicz; (5) R. Boyce; and (6) Omara. (Id. at 2–4.) In addition to the complaint, Plaintiff also filed a motion for leave to proceed in forma pauperis (Doc. No. 2), as well as his prisoner trust fund account statement (Doc. No. 3). On September 14, 2022, the Court granted Plaintiff's motion for leave to proceed in forma pauperis, deemed his complaint filed, and directed the Clerk of Court to serve a copy of the complaint upon Defendants. (Doc. No. 6.) In the interest of administrative judicial economy, the Court requested that Defendants waive service pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. (Id.)

On October 14, 2022, Defendants collectively filed their waiver of service. (Doc. No. 11.) One month later, on November 14, 2022, Defendants filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. No. 12), followed by a supporting brief (Doc. No. 16). After Defendants filed their motion to dismiss the complaint, Plaintiff filed a motion seeking the appointment of counsel, as well as a supporting brief. (Doc. Nos. 13, 14.) Plaintiff has not, however filed a brief in opposition to Defendants' motion to dismiss the complaint, and the time period for doing so has passed. See M.D. Pa. L.R. 7.6 (providing that "[a]ny party opposing any motion ... shall file a brief in opposition within fourteen (14) days after service of the movant's brief ..."). Thus, the parties' motions are ripe for the Court's resolution.

**B. Factual Background**

In accordance with the standard of review for motions to dismiss filed pursuant to Rule 12(b)(6), the Court accepts as true all factual allegations in Plaintiff's complaint and all reasonable inferences that can be drawn from them, and views them in the light most favorable to Plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). [1]

**\*2** Plaintiff was transferred to SCI Frackville on May 16, 2022, where he was housed in the Behavioral Management Unit. (Doc. Nos. 1, 1-1.) After his arrival to SCI Frackville, Plaintiff told Defendants Wegrzynowicz, Wynder, Wentzel, Kephart, and Boyce that he should not be housed there because he has "active separations" with other inmates at the prison. (Doc. Nos. 1 at 5, ¶ 2.) In various inmate request slips attached to the complaint, Plaintiff has identified these inmates as "Zakeem Johnson and Ralphael Spearman." (Doc. Nos. 1-2 through 1-4.) And, in at least one other inmate

request slip, Plaintiff has also identified inmate "Smith" as being a problematic inmate at SCI Frackville. (Doc. No. 1-6.)

More specifically, on May 23, 2022, Inmate Smith stated to Plaintiff, "hey faggot Murda said bring your bitch ass out[,]" which—according to Plaintiff—was a reference to inmate Spearman. (Doc. No. 1 at 5, ¶ 3.) Plaintiff ignored this remark (id.), but the following day he submitted an inmate request slip to Defendants Wegrzynowicz and Wynder regarding his "safety concerns" (id. ¶ 4); see also (Doc. No. 1-2 (containing the May 24, 2022 request slip)). Subsequently, on June 13, 2022, Plaintiff submitted another inmate request slip to Defendants Wegrzynowicz, Wynder, Boyce, Wentzel, and Kephart, reiterating his "safety concerns." (Doc. Nos. 1 at 5, ¶ 5; 1-3.) And, shortly thereafter, on June 22, 2022, Plaintiff submitted yet another inmate request slip to Defendant Wegrzynowicz and the Program Review Committee, explaining that he was "in fear for [his] safety[.]" (Doc. Nos. 1 at 5, ¶ 6; 1-4.) In response to this request slip, Plaintiff was told that he would not be scheduled for any activities where these other inmates would be present. (Id.)

On July 3, 2022, Plaintiff received an email from inmate Spearman, telling Plaintiff to "come out due to ongoing issues[,]" but Plaintiff did not respond. (Doc. No. 1 at 5, ¶ 7.) The following day, on July 4, 2022, inmate Smith "loged [sic] into Plaintiff['s] emails and sent [himself] a message pretending he was Plaintiff." (Id. at 6, ¶ 9; Doc. No. 1-6 (containing a request slip, wherein Plaintiff stated that he needed his security questions changed because inmate Smith has his password and is sending emails from his account).)

On July 5, 2022, Plaintiff spoke to Defendants Boyce and Wegrzynowicz about going into general population at the prison. (Doc. Nos. 1 at 6, ¶ 10; 1-7.) The following day, on July 6, 2022, Plaintiff also spoke to Defendants Omara and Kephart about his safety concerns. (Doc. No. 1 at 6, ¶ 11.) And, on July 7, 2022, Plaintiff spoke to Defendant Wynder, Kephart, Omara, Wentzel, and Wegrzynowicz. (Doc. No. 1 at 6, ¶ 12.) Plaintiff spoke with these Defendants about his "phase two privileges[,]" and Plaintiff was informed that he would not go to general population if he withdraws grievance number 986463. (Doc. No. 1-9.) Plaintiff was also told that he would not be "placed back in handcuffs" if he withdraws this grievance. (Id.; Doc. No. 1-10.) Plaintiff seems to suggest that he was being retaliated against for filing grievances and lawsuits against the DOC. (Id.)

Despite Plaintiff's "continuous safety complaints[,]" on July 16, 2022, "inmate Smith ... through [sic] an unknown liquid[,] sticking Plaintiff in his left leg." (Doc. No. 1 at 6, ¶ 15.) On that same date, "Plaintiff was denied a transfer[.]" (Id. at 6, ¶ 16.) And, finally, on July 20, 2022, Plaintiff asked Defendant Wegrzynowicz if he could get the same privileges as inmate "Lewis." (Id. at 7, ¶ 17.) According to Plaintiff's grievance dated July 20, 2022, Plaintiff was told that, if he withdraws grievance number 989028, then he could get his keyboard, bucket denture cup, and game time back. (Doc. No. 1-14.)

**\*3** In connection with all of these allegations, Plaintiff asserts that he has suffered "mental anguish, emotional distress, [and] emotional anguish." (Doc. No. 1 at 10.) In addition, Plaintiff sets forth the following claims: "equal protection, retaliation, cruel [and] unusual punishment[,] failure to protect[,] unconstitutional conditions of confinement[,] [and] due process." [2] (Id.) As for relief, he seeks "lawyer fee's [sic], court cost, [and] 150,000.00" (Id.)

## II. LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the United States Court of Appeals for the Third Circuit ("Third Circuit") has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

 *4  In the context of pro se prisoner litigation, the court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520–21 (1972).

## III. DISCUSSION

The Court treats Plaintiff's complaint as asserting violations of his First, Eighth, and Fourteenth Amendment rights pursuant to the provisions of Section 1983. (Doc. No. 1 at 10.) Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

> thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983. Thus, "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." See Shuman v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." See id. (citation omitted).

As discussed above, Defendants have filed a motion to dismiss Plaintiff's Section 1983 claims. (Doc. Nos. 12, 16.) In support, Defendants assert two (2) grounds for dismissal: (1) Plaintiff's complaint fails to comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure; and (2) Plaintiff's complaint fails to state a claim upon which relief can be granted under the First, Eighth, and Fourteenth Amendments. (Doc. No. 16 at 3.) The Court focuses its discussion on Defendants' Rule 8 argument.

### A. Rule 8 of the Federal Rules of Civil Procedure

Rule 8 of the Federal Rules of Civil Procedure sets forth the general rules of pleading. See Fed. R. Civ. P. 8. Rule 8(a)(2) requires a pleading to contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" See Fed. R. Civ. P. 8(a)(2). In addition, Rule 8(d)(1) requires that "[e]ach allegation ... be simple, concise, and direct." See Fed. R. Civ. P. 8(d)(1). Generally speaking, these Rules require a plaintiff to provide "the defendant notice of what the ... claim is and the grounds upon which it rests." See Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). This pleading standard requires more than legal labels and conclusory assertions: a complaint must include enough facts "to raise a right to relief above the speculative level[.]" See Twombly, 550 U.S. at 555 (citations omitted).

Defendants argue that Plaintiff's complaint runs afoul of Rule 8(a) because, inter alia, it does not separate into different counts each claim for relief and, instead,

asserts multiple claims against multiple Defendants without specifying against which of the Defendants each claim has been asserted. (Doc. No. 16 at 5.) Having carefully reviewed the complaint, the Court agrees. As discussed above, Plaintiff's complaint names as Defendants six (6) individuals who work at SCI Frackville. (Doc. No. 1 at 2–4.) In addition, Plaintiff's complaint broadly asserts claims of "equal protection, retaliation, cruel [and] unusual punishment[,] failure to protect[,] unconstitutional conditions of confinement[,] [and] due process[.]" (Id. at 10.) Plaintiff, however, does not clearly identify which claims are being asserted against which Defendants. In addition, Plaintiff does not set clearly set forth the grounds upon which each claim against each Defendant rests. As a result, the Defendants, as well as the Court, are unable to discern exactly how many different claims Plaintiff is attempting to assert against each Defendant or the factual grounds upon which those specific claims rest.

**\*5** Accordingly, the Court concludes that Plaintiff's complaint is subject to dismissal for failure to satisfy Rule 8 of the Federal Rules of Civil Procedure. In reaching this conclusion, the Court reiterates that Plaintiff has not filed a brief in opposition to Defendants' motion to dismiss and, thus, he is deemed not to oppose Defendants' motion or their Rule 8 argument. See M.D. Pa. L.R. 7.6 (explaining, in relevant part, that any party opposing a motion, who fails to file a brief in opposition within fourteen (14) days after service of the moving party's brief, "shall be deemed not to oppose such motion" (emphasis added)). [3]

### B. Leave to Amend

The Court must next determine whether Plaintiff should be granted leave to amend his complaint. Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party

by virtue of allowance of the amendment, [or] futility of the amendment[.]" See id. The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted." See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court cannot conclude that it would be futile to grant Plaintiff leave to amend his complaint in order to comply with Rule 8 of the Federal Rules of Civil Procedure. Accordingly, the Court will grant Plaintiff leave to file an amended complaint. In granting Plaintiff such leave, he is advised that the amended complaint must be complete in all respects. It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed. As discussed above, the amended complaint shall set forth Plaintiff's claims in short, concise, and plain statements. Neither conclusory allegations nor broad allegations will set forth a cognizable claim. Finally, should Plaintiff file an amended complaint, he is directed to: include factual allegations about each defendant in a single location, rather than throughout the amended complaint; refrain from including factual allegations that are not directly relevant to his claims; identify each claim that is being asserted against each Defendant; and refrain from simply relying on documents attached to the complaint in order to set forth the facts of this case.

### C. Plaintiff's Motion Seeking the Appointment of Counsel

**\*6** The final issue before the Court is whether a request for appointed counsel for Plaintiff is warranted at this time. In his motion seeking the appointment of counsel, Plaintiff asserts that he is indigent and mentally ill, that the issues in this case are complex, and that he has limited knowledge of the law. (Doc. Nos. 13 at 1; 14 at 3.) In addition, Plaintiff asserts that he is a "segregation inmate[,]" has limited access to the prison's law library, and, thus, is unable to appropriately investigate the facts of this case. (Doc. No. 13 at 1.) Finally, Plaintiff contends that there will be conflicting testimony in this case. (Doc. No. 14 at 3.)

The Court begins its discussion with the basic principle that, although indigent civil litigants have no constitutional or statutory right to the appointment of counsel, district courts have broad discretionary power to request appointed counsel for such litigants pursuant to 28 U.S.C. § 1915(e)(1). See Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002)

Case 3:26-cv-00879-JFS-DFB    Document 11-2    Filed 05/18/26    Page 12 of 62

Coit v. Wynder, Not Reported in Fed. Supp. (2023)
2023 WL 4278668

(citations omitted). The United States Court of Appeals for the Third Circuit has "outlined a two-step process" that district courts are to follow when deciding whether to request appointed counsel to represent an indigent civil litigant. See Houser v. Folino, 927 F.3d 693, 697 (3d Cir. 2019).

First, as a threshold inquiry, the district court must consider whether the plaintiff's case has some arguable merit in fact and law. See Montgomery, 294 F.3d at 498–99 (citations omitted). Second, if the district court determines that the plaintiff's case has some arguable merit in fact and law, then the district court is to consider other factors, including: (1) the plaintiff's ability to present his own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be required and the plaintiff's ability to pursue such investigation; (4) the extent to which the case is likely to turn on credibility determinations; (5) whether the case will require testimony from expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf. See Houser, 927 F.3d at 697 (citations omitted).

This list, however, "is not meant to be exhaustive." See Tabron v. Grace, 6 F.3d 147, 157 (3d Cir. 1993); see also Houser, 927 F.3d at 700 (stating that "[w]e have always emphasized that [these] factors are only a guidepost for district courts in their exercise of the broad statutory discretion granted to them by Congress. They are not exhaustive, nor are they each always essential"). Rather, the district court must determine on a case-by-case basis whether a request for appointed counsel is warranted. See Tabron, 6 F.3d at 157–58.

Having reviewed Plaintiff's motion, the Court concludes that the appointment of counsel is not warranted at this time. Under the process outlined above, the Court must consider whether Plaintiff's case has some arguable merit in fact and law and, if so, whether the pertinent factors warrant the appointment of counsel. The Court, as discussed above, finds that Plaintiff's complaint is subject to dismissal for failure to satisfy Rule 8 of the Federal Rules of Civil Procedure. Thus, at this point, and until Plaintiff files an amended complaint, the Court cannot say that Plaintiff's case has some arguable merit in fact and law. But, even assuming arguendo that his case has such merit in fact and law, the Court finds that Plaintiff has the apparent ability to read, write, and understand English, as well as the apparent ability to litigate this action pro se, as demonstrated by the filing of his complaint, his motion for leave to proceed in forma pauperis, and his motion seeking the appointment of counsel. (Doc. Nos. 1, 2, 3, 13.) Accordingly, given the Court's duty to liberally construe Plaintiff's pro se pleadings, see Riley v. Jeffes, 777 F.2d 143, 147-48 (3d Cir. 1985), coupled with his apparent ability to litigate this action, the Court concludes that the appointment of counsel is not warranted at this time.

**\*7** Additionally, with respect to Plaintiff's concerns regarding limited resources at the prison's law library, the Court notes that, if Plaintiff were to need extensions of time to respond to filings and Orders in this matter, which would require a response from him, then he need only request an extension from the Court at the appropriate time. And, finally, in the event that future proceedings would otherwise demonstrate the need for counsel, then the Court may reconsider this matter either sua sponte or upon a motion properly filed by Plaintiff.

## IV. CONCLUSION

Accordingly, for all of the foregoing reasons, the Court will grant Defendants' motion to dismiss the complaint for failure to comply with Rule 8(a). (Doc. No. 12.) The Court will also grant Plaintiff leave to file an amended complaint in accordance with the Federal Rules of Civil Procedure and the directives of this Memorandum. Finally, the Court will deny, but without prejudice, Plaintiff's motion seeking the appointment of counsel. (Doc. No. 13.) An appropriate Order follows.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4278668

---

**Footnotes**

Case 3:26-cv-00879-JFS-DFB    Document 11-2    Filed 05/18/26    Page 13 of 62

2023 WL 4278668

1    The Court, having conducted an independent review of this matter, and in an effort to create a clear and comprehensive record, has culled the alleged facts of this case from Plaintiff's complaint (Doc. No. 1) and the documents attached to Plaintiff's complaint (Doc. Nos. 1-1 through 1-15).

2    As discussed more fully below, Plaintiff has failed to identify which of these claims are asserted against which of the named Defendants, and Plaintiff has further failed to set forth the specific grounds upon which each claim against each Defendant rests.

3    Although Defendants have asserted an additional ground for dismissal (i.e., that the complaint fails to state a claim upon which relief can granted), the Court finds that the most appropriate course of action here, as discussed infra, is to instruct Plaintiff to file an amended complaint in order to comply with Rule 8 of the Federal Rules of Civil Procedure so that he can clearly and comprehensively set forth his claims and the grounds upon which those claims rest against each of the named Defendants.

---

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**3**

2026 WL 852013
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

DELUCA'S AUTO REPAIR INC., et al., Plaintiffs,
v.
CITY OF HAZLETON, et al., Defendants.

CIVIL ACTION NO. 3:25-cv-00511
|
Signed 03/27/2026

**Attorneys and Law Firms**

Andrew T. Bench, Andrew Theyken Bench Legal, Allentown, PA, Joseph P. Nahas, Frackville, PA, for Plaintiffs.

James D. Greco, Marshall Dennehey Warner Coleman & Goggin, Scranton, PA, Patrick J. Boland, III, Marshall Dennehey, P.C., Moosic, PA, for Defendants City of Hazleton, Mayor Jeffery Cusat, Former Mayor Joseph Yannuzzi, Police Chief Jerry Speziale, Police Chief Brian Schoonmaker, Police Captain Robert DeMalfi, Police Captain Anthony White, Police Lieutenant Kirk Wetzel, Police Sergeant Keith McAlarney, Police Sergeant Cameo "Mark" Zola, Police Detective William Gallagher, Police Detective Brett Green, Police Corporal Chris Zubris, Code Officer Diane Panzarella, Code Officer Nadine Sist, RTK Officer Chris Pavlick, RTK Officer Gary Perna, Council President James Perry, Councilman Tony Columbo, Councilman John "Jack" Mundie, Councilman Mark Ondishin, Councilwoman Lauran Sacco, Councilman David Sosar.

Cletus P. Lyman, Lyman & Ash, Philadelphia, PA, for Defendants Paul's Auto Body and Mechanical Repair Center, Inc., Paul Sateach Sr., Paul Sateach, Jr.

### MEMORANDUM

JOSEPH F. SAPORITO, JR., United States District Judge

**\*1** This is a federal civil rights action concerning an alleged public-private conspiracy to establish a municipal towing monopoly in the City of Hazleton. It was commenced when the plaintiffs filed their nine-count complaint against the 26 named defendants on March 20, 2025. Doc. 1.

Nominally, there are five named plaintiffs, who can be divided into two groups for the purposes of this litigation.

The first group of plaintiffs consists of DeLuca's Auto Repair Inc., a defunct Pennsylvania corporation formerly in the business of providing vehicle towing and salvage services in the Hazleton area, [1] and Cynthia Ann DeLuca, sole shareholder and successor/assignee of the defunct corporation's interests. The complaint refers to these two plaintiffs collectively as "DeLuca's Towing."

The second group of plaintiffs consists of Zenier's Automotive, Inc., a Pennsylvania corporation in the business of providing vehicle towing and salvage services in the Hazleton area, and its two principal shareholders, William George Buggy and Richard M. Buggy. The complaint refers to these three plaintiffs collectively as "Zenier's Towing."

The 26 named defendants are similarly divided into two groups, each of which is represented by separate counsel.

The first, and larger, group of defendants consists of the City of Hazleton and 22 of its municipal officials and employees: (1) Jeff Cusat, the current mayor of Hazleton; (2) Joseph Yannuzzi, his predecessor as mayor of Hazleton; (3) James Perry, president of the Hazleton city council; (4) Tony Columbo, a city council member; (5) John "Jack" Mundie, a city council member; (6) Mark Ondishin, a city council member; (7) Lauran Sacco, a city council member; (8) David Sosar, a city council member; (9) Brian Schoonmaker, Hazleton's police chief; (10) Jerry Speziale, his predecessor as police chief; (11) Robert DeMalfi, a Hazleton police captain; (12) Anthony White, a Hazleton police captain; (13) Kirk Wetzel, a Hazleton police lieutenant; (14) Keith McAlarney, a Hazleton police sergeant; (15) Cameo "Mark" Zola, a Hazleton police sergeant; (16) William Gallagher, a Hazleton police detective; (17) Brett Green, a Hazleton police detective; (18) Chris Zubris, a Hazleton police corporal; (19) Diane Panzarella, a Hazleton code enforcement officer; (20) Nadine Sist, a Hazleton code enforcement officer; (21) Christopher Pavlick, a Hazleton right-to-know officer; and (22) Gary Perna, a Hazleton right-to-know officer.

**\*2** The second group of defendants consists of Paul's Auto Body and Mechanical Repair Center, Inc., a Pennsylvania corporation in the business of providing vehicle towing services in the Hazleton area, and its two principals, Paul F. Sateach and Paul J. Sateach. [2] The complaint refers to these three plaintiffs collectively as "Paul's Towing."

The complaint broadly alleges a long-running civil conspiracy between Hazleton municipal officials and Paul's Towing to eliminate competition and establish a municipal towing monopoly for the benefit of Paul's Towing—a male-owned business with personal and familial ties to Hazleton's political leadership. Primarily, the complaint alleges that, in 2019 and again in 2023, Hazleton issued requests for proposals (RFPs) for an exclusive municipal towing contract. Ultimately, the City awarded both exclusive towing contracts to Paul's Towing in a process that was allegedly rigged to favor Paul's Towing over other, allegedly more qualified bidders, including the plaintiffs. In addition, the complaint alleges that, from 2016 through 2023, the City and its officials refused to complete statutorily mandated salvage paperwork for DeLuca's Towing, preventing the business from disposing of abandoned vehicles it had towed to and stored on its property, causing financial losses in excess of $2.7 million.

On behalf of both Zenier's Towing and DeLuca's Towing, the complaint asserts a § 1983 Fourteenth Amendment procedural due process claim (Count I), a § 1983 Fourteenth Amendment "class of one" equal protection claim (Count II), a state common law restraint of trade claim (Count III), and a state common law tortious interference with prospective economic advantage claim (Count IV) against "all defendants." On behalf of DeLuca's Towing only, the complaint asserts a § 1983 Fourteenth Amendment sex discrimination equal protection claim (Count V) and a § 1985(3) conspiracy to interfere with equal protection rights claim (Count VI) against "all defendants," as well as a § 1983 Fourteenth Amendment procedural due process claim (Count VII), a § 1983 Fourteenth Amendment substantive due process claim (Count VIII), and a state common law unjust enrichment claim (Count IX) against "all defendants [ ]except Paul's Towing."

For relief, the plaintiffs seek an award of damages, as well as declaratory and injunctive relief. [3]

Both sets of defendants have moved to dismiss the complaint. Doc. 8; Doc. 17. These dismissal motions are fully briefed and ripe for decision. Doc. 14; Doc. 21; Doc. 27; Doc. 28; Doc. 33; Doc. 34.

## I. LEGAL STANDARDS

### A. Rule 12(b)(1) Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing the existence of subject matter jurisdiction when challenged under Rule 12(b)(1). *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). A defendant may challenge the existence of subject matter jurisdiction in one of two fashions: it may attack the complaint on its face or it may attack the existence of subject matter jurisdiction in fact, relying on evidence beyond the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Where a defendant attacks a complaint as deficient on its face, "the court must consider the allegations of the complaint as true." *Mortensen*, 549 F.2d at 891. "In deciding a Rule 12(b)(1) facial attack, the court may only consider the allegations contained in the complaint and the exhibits attached to the complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies; and 'undisputably authentic' documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss." *Medici v. Pocono Mountain Sch. Dist.*, No. 09-CV-2344, 2010 WL 1006917, at *2 (M.D. Pa. Mar. 16, 2010). However, when a motion to dismiss attacks the existence of subject matter jurisdiction in fact, "no presumptive truthfulness attaches to plaintiff's allegations," and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. This case falls into the former category.

### B. Rule 12(b)(6) Standard

**\*3** Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and

unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Phila.*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cnty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## II. DISCUSSION

### A. DeLuca's Towing and Exclusive Towing Contract RFP Processes

We begin with a threshold question of jurisdiction. In Counts I, II, III, IV, V, and VI, DeLuca's Towing asserts federal and state-law claims concerning the 2019 and 2023 exclusive towing contract RFP processes. [4] The defendants argue that DeLuca's Towing lacks Article III standing to assert claims regarding the 2019 and 2023 exclusive towing contract RFP processes because DeLuca's Towing failed to submit a bid for either contract. We agree.

Unlike Zenier's Towing, which bid on both contracts, DeLuca's Towing failed to bid on either contract. With respect to the 2019 RFP, the complaint alleges that DeLuca's Towing did not request to be evaluated for the 2019 RFP because it did not meet all of the criteria listed in the RFP. Compl. ¶ 73 & n.9, Doc. 1. In particular, DeLuca's Towing did not possess heavy wrecking equipment, which Paul's Towing —the company ultimately awarded the exclusive towing contract—also lacked. *See id.* ¶¶ 73 n.9, 74 & n.10. The complaint alleges that, had DeLuca's Towing understood that the RFP criteria were not all mandatory, it would have submitted a bid. *Id.* ¶ 73 n.9. With respect to the 2023 RFP, DeLuca's Towing declined to participate in what it alleges was a "sham interview" process because it—and all the towers and salvors in Hazleton—"knew that the fix was in." *Id.* ¶¶ 96–99.

Article III standing requires a plaintiff to plead three elements: (1) the plaintiff must have suffered an "injury in fact"—"an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) the alleged injury must be "fairly traceable to the challenged conduct of the defendant"; and (3) the alleged injury "is likely to be redressed by a favorable judicial decision." *Associated Builders & Contractors W. Pa.*

*v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 287 (3d Cir. 2023).

Here, DeLuca's Towing has failed to satisfy the first element of standing because it did not bid for either towing contract, and thus it has failed to plausibly plead any actual injury. [5] *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 167 (1972) (denying standing to plaintiff challenging discriminatory membership policies because "he never sought to become a member"); *Associated Builders*, 81 F.4th at 290–91 ("[W]ithout an actual ... injury, evidenced by a past bid ..., we cannot distinguish Plaintiffs 'from a person with a mere interest' in stopping the [defendants' allegedly discriminatory practice]."); *see also Jayco Sys., Inc. v. Savin Bus. Machs. Corp.*, 777 F.2d 306, 316 (5th Cir. 1985).

**\*4** The Supreme Court has recognized one exception to the rule that a non-bidder cannot challenge the award of a bid to another party:

> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The "injury in fact" in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). But this exception applies only to challenges to "situations in which some government policy allegedly acts as an impediment to a discrete class of individuals in competition for some government-sponsored benefit by precluding them from competing for the benefit on an equal footing with other applicants"—e.g., minority set-aside programs. *Vaughn v. Consumer Home Mortg. Co., Inc.*, 470 F. Supp. 2d 248, 265 (E.D.N.Y. 2007); *accord Feibush v. Johnson*, No. 17-3134, 2018 WL 347545, at *2 n.3 (E.D. Pa. Jan. 9, 2018) ("[T]his line of jurisprudence is limited to situations alleging a policy

of discrimination against a class of individuals."); *Carik v. U.S. Dep't of Health & Hum. Servs.*, 4 F. Supp. 3d 41, 55 (D.D.C. 2013) (finding that the *Jacksonville* rule was limited to traditional equal protection claims concerning protected classes, such as race, color, religion, sex, or national origin).

Here, DeLuca's Towing's sex discrimination equal protection claim, set forth in Count V of the complaint, is the only such claim that potentially falls within the ambit of *Jacksonville.* [6] But the plaintiffs have not pleaded, much less plausibly so, that DeLuca's Towing was able and ready to bid on either contract, nor that, but for the alleged sex discrimination, it would have submitted a bid on either contract. *See Earle Asphalt Co. v. Cnty. of Camden*, No. 22-2648, 2023 WL 8711815, at *1 (3d Cir. Dec. 18, 2023) ("Whether a party is 'able and ready' is a legal conclusion that depends on the facts. Plaintiffs must plausibly plead that, but for the [alleged discriminatory policy], they would have bid on the contracts. That would make their past harm concrete." (citation modified)). The complaint alleges only that DeLuca's Towing did not bid on the 2019 contract because it did not satisfy at least one of the published criteria, and that it did not bid on the 2023 contract because it "knew the fix was in." *See* Compl. ¶¶ 73 & n.9, 74 & n.10, 96–99. The complaint further alleges in conclusory fashion that "the defendants intentionally discriminated against them on the basis of sex ... due to DeLuca's Towing being a female-owned and operated business," *id.* ¶ 211, but beyond the fact that DeLuca's Towing is female-owned and Paul's Towing is male-owned, the complaint fails to allege any facts whatsoever to support a reasonable inference of any gender-based discriminatory intent. The complaint has failed to allege any facts to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see also Earle Asphalt*, 2023 WL 8711815, at *1 (quoting *Twombly*).

**\*5** Accordingly, Counts I, II, and III of the complaint —asserting a § 1983 procedural due process claim, a § 1983 "class of one" equal protection claim, and a common law restraint of trade claim—will be dismissed for lack of Article III standing with respect to plaintiffs DeLuca's Towing only, pursuant to Fed. R. Civ. P. 12(b)(1). Count IV of the complaint—asserting a common law tortious interference with prospective economic advantage claim— will be dismissed for lack of Article III standing with respect to DeLuca's Towing only, to the extent it is based on the 2019 and 2023 contracting processes, pursuant to Fed. R. Civ. P. 12(b)(1). Counts V and VI of the complaint—asserting

a § 1983 sex discrimination equal protection claim and a § 1985(3) conspiracy to violate equal protection rights claim— will be dismissed for lack of Article III standing to the extent they are based on the 2019 and 2023 contracting processes, pursuant to Fed. R. Civ. P. 12(b)(1).

### B. Waiver of Count I Procedural Due Process Claims

In their brief in opposition, the plaintiffs have expressly conceded that their claims asserted in Count I should be dismissed. *See* Am. Br. Opp'n Hazleton Mot. 24–25, Doc. 27; Br. Opp'n Paul's Towing Mot. 21, Doc. 28. The filing of a brief in opposition to a motion to dismiss that fails to respond to a substantive argument to dismiss a particular claim results in the waiver or abandonment of that claim. *See Dribelbis v. Scholton*, 274 Fed. App'x 183, 185 (3d Cir. 2008) (affirming district court's finding of waiver as to an argument where plaintiff had opportunity to address it in his opposition brief but failed to do so); *Levy-Tatum v. Navient Solutions, Inc.*, 183 F. Supp. 3d 701, 712 (E.D. Pa. 2016) (collecting cases); *D'Angio v. Borough of Nescopeck*, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999) (finding claims waived where plaintiff failed to address defendant's argument in his brief in opposition to a motion to dismiss); *see also LM Gen. Ins. Co. v. LeBrun*, 470 F. Supp. 3d 440, 460 (E.D. Pa. 2020); *Celestial Cmty. Dev. Corp. v. City of Phila.*, 901 F. Supp. 2d 566, 578 (E.D. Pa. 2012).

Accordingly, Count I of the complaint, asserting procedural due process claims by Zenier's Towing arising out of the 2019 and 2023 RFP processes, will be dismissed as waived and for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### C. Redundant Official-Capacity Claims

The plaintiffs have named the former Hazleton mayor, defendant Yannuzzi, in his personal capacity only. All other city officials and employees are named in both personal and official capacities.

But "[o]fficial capacity actions are redundant where the entity for which the individuals worked is named." *Highhouse v. Wayne Highlands Sch. Dist.*, 205 F. Supp. 3d 639, 646 (M.D. Pa. 2016) (dismissing official-capacity claims against municipal officials as redundant when municipality was also named as a defendant). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated

as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985).

Thus, pursuant to the court's inherent authority to control its docket and avoid duplicative claims, the plaintiffs' official-capacity claims against the individual municipal defendants —Cusat, Perry, Columbo, Mundie, Ondishin, Sacco, Sosar, Schoonmaker, Speziale, DeMalfi, White, Wetzel, McAlarney, Zola, Gallagher, Green, Zubris, Panzarella, Sist, Pavlick, and Perna—may be dismissed as redundant or duplicative of the plaintiffs' substantially identical claims against their employer —the City of Hazleton. *See Korth v. Hoover,* 190 F. Supp. 3d 394, 402–03 (M.D. Pa. 2016); *see also Janowski v. City of N. Wildwood,* 259 F. Supp. 3d 113, 131– 32 (D.N.J. 2017); *Gretzula v. Camden Cnty. Tech. Schs. Bd. of Educ.,* 965 F. Supp. 2d 478, 487–88 (D.N.J. 2013); *Satterfield v. Borough of Schuylkill Haven,* 12 F. Supp. 2d 423, 431–32 (E.D. Pa. 1998). [7]

**\*6** Accordingly, the plaintiff's *official-capacity* claims against the individual municipal defendants—Cusat, Perry, Columbo, Mundie, Ondishin, Sacco, Sosar, Schoonmaker, Speziale, DeMalfi, White, Wetzel, McAlarney, Zola, Gallagher, Green, Zubris, Panzarella, Sist, Pavlick, and Perna—will be dismissed as redundant or duplicative of the plaintiffs' claims against their employer, the municipal defendant, City of Hazleton, pursuant to the court's inherent authority to control its docket and avoid duplicative claims.

### D. Shotgun Pleading / Personal Involvement

The defendants have moved to dismiss the complaint in part on the ground that it fails to allege specific conduct with respect to *any* of the individual defendants.

Rule 8 of the Federal Rules of Civil Procedure provides that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a) (2) requires a 'showing' rather than a blanket assertion of an entitlement to relief .... [W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 232 (3d Cir. 2008) (citing *Twombly,* 550 U.S. at 555 n.3).

"Complaints that violate Rule 8 are often referred to as 'shotgun pleadings.' " *Fike v. Global Pharma Healthcare*

*Private, Ltd.,* 741 F. Supp. 3d 265, 271 (E.D. Pa. 2024); *see also Bartol v. Barrowclough,* 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017). "The Third Circuit has criticized 'the all too common shotgun pleading approach' to complaints." *Bartol,* 251 F. Supp. 3d at 859 (quoting *Hynson ex rel. Hynson v. City of Chester Legal Dep't,* 864 F.2d 1026, 1031 n.13 (3d Cir. 1988)); *see also M.B. v. Schuylkill Cnty.,* 375 F. Supp. 3d 574, 586 (E.D. Pa. 2018) (same). As the Third Circuit has explained, requiring a plaintiff to plead facts with specificity "ha[s] a twofold purpose: 1) to weed out at an early stage frivolous claims and those that should be heard in state court, and 2) to provide the defendant with sufficient notice of the claims asserted." *Hynson,* 864 F.2d at 1031 n.13; *Bartol,* 251 F. Supp. 3d at 859 (quoting *Hynson*).

The courts of this circuit have described four categories of shotgun pleadings:

> (1) a complaint containing multiple counts where each count adopts the allegations of all preceding counts; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that does not separate into a different count each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Fike,* 741 F. Supp. 3d at 271 (quoting *Weiland v. Palm Beach Cnty. Sheriff's Office,* 792 F.3d 1313, 1321–23 (11th Cir. 2015)) (internal quotation marks and brackets omitted); *see also M.B.,* 375 F. Supp. 3d at 586 (quoting *Bartol,* 251 F. Supp. 3d at 859); *Bartol,* 251 F. Supp. 3d at 859 (quoting *Weiland,* 792 F.3d at 1321–23). "The 'unifying characteristic' of these four types of shotgun pleadings 'is that they fail to one degree or another, in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.' " *Bartol,* 251 F. Supp. 3d at 859 (quoting *Weiland,* 792 F.3d at 1323); *see also Fike,*

741 F. Supp. 3d at 272 (same); *M.B.*, 375 F. Supp. 3d at 586 (quoting *Bartol*, 251 F. Supp. 3d at 859).

**\*7** In considering the "relatively rare" fourth category of shotgun pleading, the *Bartol* court described two illustrative examples from the Eleventh Circuit:

> In *Magluta v. Samples*, 256 F.3d 1281, 1284 (11th Cir. 2001), the court found that a complaint that was fifty-eight pages long, named fourteen defendants, and charged all defendants in each count was "a quintessential 'shotgun' pleading" because it was "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of." Similarly, in *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th Cir. 1997), the court described as a "prototypical 'shotgun complaint' " one that "offered vague and conclusory factual allegations in an effort to support a multiplicity of discrimination claims leveled against 15 defendants."

*Bartol*, 251 F. Supp. 3d at 859–60 (citations omitted). The *Bartol* court then described the complaint before it, which we find similarly illustrative of the fourth category of shotgun pleading:

> Here, Plaintiff's complaint, which is fifty-four pages long, brings thirteen different counts against any combination of well over seven distinct defendants. Most of these defendants were not present during the events at issue in this case, and it is likely that many have never had any interaction with Plaintiff at all. For example, aside from Police Officers Barrowclough, Ryan, and O'Neill, the defendant individual members of the Tinicum Township Police Department largely can be presumed, based on "geographic and temporal realities," to have no knowledge or involvement in [the plaintiff's excessive force and other arrest-related claims]. The same is true for the individual members

of the Tinicum Township Board of Commissioners.

*Id.* at 860 (footnote and citation omitted).

"Although there is no categorical prohibition against [such] group pleading, a complaint is insufficient where there is genuine uncertainty regarding who is responsible for what, such as when multiple defendants are accused of acting jointly." *Salyers v. A.J. Blosenski, Inc.*, 731 F. Supp. 3d 670, 683–84 (E.D. Pa. 2024) (internal quotation marks and brackets omitted); *see also Moe v. Twp. of Woodbridge*, No. 19-14139, 2020 WL 6156756, at \*4 (D.N.J. Oct. 20, 2020) ("Mere conclusory allegations against defendants as a group which fail to allege the personal involvement of any defendant are insufficient to survive a motion to dismiss.") (internal quotation marks and brackets omitted). "To survive a motion to dismiss, then, a complaint must plead sufficient facts to show that the plaintiff is entitled to relief *from a particular defendant.*" *Salyers*, 731 F. Supp. 3d at 684 (internal quotation marks and brackets omitted); *see also Moe*, 2020 WL 6156756, at \*4 ("When different defendants are named in a complaint, plaintiff cannot refer to all defendants who occupied different positions and presumably had distinct roles in the alleged misconduct without specifying which defendants engaged in what wrongful conduct.") (internal quotation marks and brackets omitted).

**\*8** In this case, the five nominal plaintiffs have filed a 57-page, 292-paragraph complaint asserting federal and state-law claims in nine separate counts against 26 separate defendants. But while it may be verbose and otherwise detailed, the complaint remarkably alleges absolutely no conduct whatsoever by *any* individual defendant. Throughout the complaint, the plaintiffs have generally attributed acts, omissions, knowledge, and intent to the City of Hazleton itself. In a handful of factual allegations, the plaintiffs have referenced individual municipal officials or employees as members of a larger group, such as "police defendants,"[8] the City's "police department,"[9] its "code enforcement office,"[10] its "city council" or "councilpersons," or its "officials."[11] The complaint also vaguely references an undefined group labeled as "City Defendants"—possibly the current and former mayors and the city council members, possibly some other unspecified combination. The complaint also refers to Paul's Auto Body and Mechanical Repair Center, Inc., Paul F. Sateach, and Paul J. Sateach collectively

throughout, sometimes as "Paul's Towing, Paul Sateach Sr., and Paul Sateach Jr.," and sometimes as just "Paul's Towing," without attributing any acts, omissions, knowledge, or intent to either of the individual defendants. Moreover, almost all of the acts, omissions, knowledge, and intent alleged in the complaint are pleaded in vague and conclusory fashion, without articulating any actual facts in support.

Based on the foregoing, we conclude that the complaint fails to give the individual defendants adequate notice of the claims against them and the grounds upon which each claim rests. *See Bartol*, 251 F. Supp. 3d at 860; *see also Weiland*, 792 F.3d at 1323; *Phillips*, 515 F.3d at 232. Thus, we find that the complaint is an improper "shotgun pleading" that fails to comply with Rule 8(a)(2).

In addition, with respect to the federal civil rights claims asserted in Counts II, V, VI, VII, and VIII, it is well established that "[c]ivil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As previously explained by the Third Circuit:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs .... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Where there are multiple events and defendants at issue, a plaintiff cannot allege personal involvement by repeatedly and collectively referring to the defendants as a group without clarifying the specific basis for *each* defendant's liability. *See Lawal v. McDonald*, 546 Fed. App'x 107, 113 (3d Cir. 2014); *see also Caristo v. Blairsville-Salsburg Sch. Dist.*, 370 F. Supp. 3d 554, 569 n.21 (W.D. Pa. 2019) ("Plaintiff must plead facts demonstrating the specific personal involvement of each Individual Defendant as to any Constitutional deprivations

she alleges. Group pleading as to such matters will not suffice."). Here, the complaint alleges only the position or role of each individual defendant within a municipal or corporate organization, without alleging any facts to establish personal involvement by any of the individual defendants in any of the alleged wrongful conduct.

**\*9** Accordingly, the remaining counts of the complaint will be dismissed with respect to all individual defendants in their personal capacity as improper shotgun pleading and for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### E. Affirmative Defense of Release

The remaining claims by DeLuca's Towing, set forth in Counts IV, V, VI, VII, VIII, and IX, are based on the City's alleged refusal to complete statutorily mandated salvage paperwork. The municipal defendants have asserted an affirmative defense of release, proffering a general release entered into by DeLuca's Towing in connection with prior state-court litigation concerning the City's refusal to complete statutorily mandated salvage paperwork for DeLuca's Towing during calendar years 2016, 2017, and 2018. Although the plaintiffs have limited the scope of DeLuca's Towing's claims in this action concerning the City's refusal to complete salvage paperwork to the period commencing with calendar year 2019, the municipal defendants contend that any claims by DeLuca's Towing based on the City's refusal to complete salvage paperwork beginning in calendar year 2019 also fall within the scope of the release.

Although the complaint makes reference to settlement of the prior state-court litigation, the release itself is not described or incorporated by reference into the complaint. Nor are the terms of the release integral to any of the plaintiffs' claims. There is nothing to suggest that the release itself was filed in the public record of state court proceedings. Thus, in the exercise of our discretion, we will exclude the release from our consideration in connection with the pending motions to dismiss. *See* Fed. R. Civ. P. 12(d); *see also Bracken v. DASCO Home Med. Equip., Inc.*, 954 F. Supp. 2d 686, 698 (S.D. Ohio 2013).

### F. Paul's Towing and State Action

The lone remaining federal civil rights claim against Paul's Towing is a Fourteenth Amendment "class of one" equal protection claim by Zenier's Towing based on the 2019 and 2023 contracting processes.[12] This federal civil rights

claim is made actionable by 42 U.S.C. § 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, a plaintiff must establish that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

**\*10** The "under color of state law" element of § 1983 excludes from its reach "merely private conduct, no matter how discriminatory or wrongful." *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982). It is beyond cavil that Paul's Auto Body and Mechanical Repair Center, Inc., is a private corporation, not an arm of the state. [13] Under limited circumstances, a private entity may be liable under § 1983 if its conduct is so closely related to governmental conduct that it can be fairly viewed as conduct of the state itself. *See Mark*, 51 F.3d at 1142–43. The Third Circuit has outlined three discrete tests to determine whether state action exists: (1) "whether the private entity has exercised powers that are traditionally the *exclusive* prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the State has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Mark*, 51 F.3d at 1142 (citations modified). "Under

any test, the inquiry is fact-specific." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotation marks and brackets omitted).

Invoking the second test, the plaintiffs here argue that Paul's Towing is a state actor because it engaged in a conspiracy with the City and municipal officials. "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). A sufficient pleading therefore must include " 'enough factual matter (taken as true) to suggest that an agreement was made,' [or] in other words, 'plausible grounds to infer an agreement.' " *Id.* (quoting *Twombly*, 550 U.S. at 556).

But the plaintiffs have failed to allege sufficient facts to plausibly suggest an agreement between Paul's Towing and the City or its officials. The complaint repeatedly alleges, in conclusory fashion, that the defendants "engaged in a civil conspiracy" or a "discriminatory conspiracy" beginning in 2016 and continuing through the present day, and that the City "coordinated" its allegedly unconstitutional actions with Paul's Towing. But the complaint simply alleges no facts whatsoever from which we may reasonably infer any such agreement or conspiracy. The only actions by Paul's Towing alleged in the complaint relate to the submission of its successful contract bids in 2019 and 2023, and to the ordinary conduct of its vehicle towing business. In conclusory fashion, the complaint asserts that the handling of the 2019 and 2023 contracting processes was motivated by nepotism, only vaguely alleging a familial relationship between the principals of Paul's Towing and one of the seven city council members sued as a defendant, Jack Mundie, and a familial relationship between Mundie and Mayor Cusat. [14] Other than the RFP processes itself, no specific communication between Paul's Towing and any municipal officials is alleged at all, much less an agreement to deprive the plaintiffs of their constitutional rights.

The plaintiffs have failed to plausibly allege that Paul's Towing has engaged in a conspiracy with a state actor. Accordingly, the lone remaining federal civil rights claim against Paul's Towing—a § 1983 Fourteenth Amendment "class of one" equal protection claim by Zenier's Towing based on the 2019 and 2023 contracting processes, set forth in Count II of the complaint—will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

**G. "Class of One" Equal Protection Claim Against the City**

 **\*11**  In Count II, Zenier's Towing asserts a § 1983 equal protection claim against the City, based on the 2019 and 2023 contracting processes. [15]

We first consider the plaintiffs' equal protection claim concerning the 2019 contracting process. The statute of limitations for a § 1983 federal civil rights claim arising in Pennsylvania is two years. *See Bougher v. Univ. of Pittsburgh,* 882 F.2d 74, 78–79 (3d Cir. 1989) (citing 42 Pa. Cons. Stat. Ann. § 5524). The date of accrual of the cause of action in a § 1983 action is determined by federal law. *See Kach v. Hose,* 589 F.3d 626, 634 (3d Cir. 2009). Under federal law, a cause of action accrues "when the plaintiff knew or should have known of the injury upon which the action is based." *Id.* Based on the allegations of the complaint, any equal protection claims arising out of the 2019 contracting process clearly accrued no later than February 14, 2020—the date when the exclusive towing contract with Paul's Towing was approved by the City and all other towing contracts were terminated. *See* Compl. ¶¶ 112, 159, 176, 195, 218, 237; *see also* Doc. 33-1. At that point, Zenier's Towing unquestionably knew of the injury upon which this particular claim is based. This federal civil action, however, was not initiated until more than five years later on March 20, 2025, and thus it was untimely filed with respect to this claim. [16]

The 2023 contracting process, however, concluded within the two-year time period before the filing of this action, satisfying the limitations period for any federal civil rights claims based on that municipal action. *See* Doc. 33-2 (2023 exclusive towing contract, dated June 9, 2023).

As previously noted, Zenier's Towing has brought a "class of one" equal protection claim arising out of the 2023 contracting process. The Supreme Court of the United States has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (per curiam). To state a claim under this theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown,* 455

F.3d 225, 239 (3d Cir. 2006). "These challenges fail when 'there is any reasonably conceivable state of facts that could provide a rational basis for the classification.' " *Highway Materials, Inc. v. Whitemarsh Twp.,* 386 Fed. App'x 251, 259 (3d Cir. 2010) (quoting *Heller v. Doe,* 509 U.S. 312, 320 (1993)).

 **\*12**  Notably, "the rational basis standard for a 'class of one' claim sets a high hurdle for plaintiffs, requiring a showing of different treatment that is 'irrational and wholly arbitrary.' " *Patterson v. Strippoli,* 639 Fed. App'x 137, 144–45 (3d Cir. 2016); *see also Olech,* 528 U.S. at 564, 565; *Eichenlaub v. Twp. of Ind.,* 385 F.3d 274, 286 (3d Cir. 2004). There is a "strong presumption of the defendants' actions' validity" when class of one claims are asserted. *Russell v. City of Phila.,* 428 Fed. App'x 174, 177 n.2 (3d Cir. 2011) (per curiam). "In other words, where there is any 'reasonably conceivable state of facts that could provide a rational basis' for the disparate treatment, a 'class of one' equal protection claim fails." *Luna Collision Ltd. v. City of Duquesne,* No. 2:25-cv-867, 2026 WL 693921, at \*6 (W.D. Pa. Mar. 12, 2026) (quoting *Highway Materials, Inc. v. Whitemarsh Twp.,* 386 Fed. App'x 251, 259 (3d Cir. 2010)); *see also Heller v. Doe,* 509 U.S. 312, 320 (1993). "Rational basis review is a very deferential standard." *Newark Cab Ass'n v. City of Newark,* 901 F.3d 146, 156 (3d Cir. 2018); *see also Luna Collision,* 2026 WL 693921, at \*6 (quoting *Newark Cab Ass'n*).

As courts have recognized, this "presumption of rationality" is "in tension with the liberal pleading standard of Fed. R. Civ. P. 12(b)(6)." *Rucci v. Cranberry Twp.,* 130 Fed. App'x 572, 575 (3d Cir. 2005); *see also Luna Collision,* 2026 WL 693921, at \*6. To "accommodate both interests," we must "accept as true all of the complaint's allegations, including all reasonable inferences that follow, and assess whether they are sufficient to overcome the presumption of rationality that applies" to the challenged practice. *Rucci,* 130 Fed. App'x at 575; *Luna Collision,* 2026 WL 693921, at \*6. "If, in its acceptance of the complaint's allegations, a district court identifies facts that may present any conceivable rational basis for the defendant's actions, the plaintiff has not met its burden." *Luna Collision,* 2026 WL 693921, at \*6 (citing *Highway Materials,* 386 Fed. App'x at 259); *see also Heller,* 509 U.S. at 320. Indeed, "the plaintiff must negate every conceivable justification for the classification in order to prove that the classification is wholly irrational." *Brian B. ex rel. Lois B. v. Pa. Dep't of Educ.,* 230 F.3d 582, 586 (3d Cir. 2000); *see also Luna Collision,* 2026 WL 693921, at \*6 (quoting *Brian B.*). A defendant, "conversely, need not provide an articulated rationale for

its for its actions at any time, and it is further appropriate for a court to 'hypothesize interests that *might* support the defendant's decisions.' " *Luna Collision*, 2026 WL 693921, at *6 (quoting *Mary Beth's Towing LLC v. Borough Brownsville*, No. 2:16-cv-00452, 2018 WL 1784556, at *9 (W.D. Pa. Apr. 13, 2018)) (brackets omitted); *see also Hassan v. City of N.Y.*, 804 F.3d 277, 305 (3d Cir. 2015).

Zenier's Towing contends that the City's decision to award the 2023 exclusive towing contract to Paul's Towing— its incumbent provider of municipal towing services— following an allegedly "sham interview" process, was based on nepotistic favoritism. In support, the plaintiffs allege only that the principals of Paul's Towing—Paul F. Sateach and Paul J. Sateach—are related to one of Hazleton's city council members, Jack Mundie, and that Mundie is in turn related to the mayor, Jeff Cusat. [17] Standing alone, however, mere allegations of nepotism or favoritism are insufficient to support an equal protection claim. *See Lake Town Towing v. Utah*, No. 2:23-cv-00818, 2025 WL 1880481, at *2–3 (D. Utah July 8, 2025) (plaintiff failed to negative all conceivable reasons for validating county dispatcher's favoritism of one tow-truck company over another); *see also Vera v. Tue*, 73 F.3d 604, 610 (5th Cir. 1996) (sheriff's nepotistic favoritism of bail bond company in which his wife and his sister-in-law had a financial interest); *Espinoza v. City of Tracy*, No. 2:15-751, 2016 WL 6696067, at *4 (E.D. Cal. Nov. 15, 2016) (disciplined police officer alleged "selective enforcement of the disciplinary process" due to "nepotism and favoritism permeating the City"); *Gray v. City of Olive Branch*, No. 2:96CV148, 1998 WL 211766, at *2 (N.D. Miss. Feb. 18, 1998) (city's favoritism in demoting similarly situated police officer who had incurred the favor of the mayor, but terminating the plaintiff). After all, "the Equal Protection Clause does not stand as a general guard against corruption; it protects individuals from specific forms of invidious discrimination." *Lake Town Towing*, 2025 WL 1880481, at *3.

**\*13** Looking to the allegations of the complaint, we are able to identify at least two facts to suggest a conceivable rational basis for the City's decision to award the 2023 exclusive towing contract to Paul's Towing. First, as the complaint acknowledges, Paul's Towing offered to pay—and, ultimately, paid—$100,000 to the City to obtain the exclusive right to provide municipal towing services to the City of Hazleton. *See* Compl. ¶¶ 101, 119, 143, 161, 179, 196; *see also* Doc. 33-2. The complaint does not allege that Zenier's Towing offered to pay an equal or greater amount to secure

the contract. [18] Second, in considering bids for the 2023 exclusive towing contract, the City may have considered the fact that Paul's Towing was the incumbent provider of these services, with a three-year track record under the expiring 2020 agreement. The complaint does not allege any facts to suggest that the City was or should have been dissatisfied with the performance of Paul's Towing over that three-year period when it had served as the City's exclusive municipal towing services provider. Nor does it allege any facts to suggest that the bid offered by Zenier's Towing was manifestly superior to that of its incumbent towing contractor, Paul's Towing. Thus, we find that the plaintiffs have failed to carry their burden to allege facts sufficient to overcome the presumption of rationality that applies to the City's decision to award the 2023 exclusive towing contract to Paul's Towing instead of Zenier's Towing.

Accordingly, the § 1983 Fourteenth Amendment "class of one" equal protection claim by Zenier's Towing against the City based on the 2019 and 2023 contracting processes, set forth in Count II of the complaint, will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). [19]

### H. Sex-Discrimination Equal Protection Claim Against the City

In Count V, DeLuca's Towing asserts a traditional § 1983 sex-discrimination equal protection claim against the City. In support, the complaint alleges that, on an unspecified number of occasions and on unspecified dates between 2016 and 2023, [20] the City refused to complete statutorily mandated salvage paperwork for DeLuca's Towing. It alleges that, on an unspecified date and continuing for an unspecified duration, the City refused to issue or renew a business license for DeLuca's Towing, requiring the company to seek the intervention of state legislators on its behalf. [21] It alleges that, on an unspecified number of occasions and on unspecified dates between 2016 and 2023, the City denied multiple right-to-know requests from DeLuca's Towing regarding these actions. [22]

**\*14** To state an equal protection claim, a plaintiff must plausibly allege that she was treated differently from persons who are similarly situated, and that this discrimination was purposeful or intentional rather than incidental. *See City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "In the context of a sex discrimination claim, plaintiffs

must show that this disparate treatment was based upon gender." *Reach Academy for Boys & Girls, inc. v. Del. Dep't of Educ.*, 46 F. Supp. 3d 455, 471 (D. Del. 2014); *see also Kahan v. Slippery Rock Univ. of Pa.*, 50 F. Supp. 3d 667, 705 (W.D. Pa. 2014). Mere conclusory allegations will not suffice. *See Blanchard v. Gallick*, 448 Fed. App'x 173, 176 (3d Cir. 2011).

DeLuca's Towing alleges in conclusory fashion that "the defendants intentionally discriminated against them on the basis of sex ... due to DeLuca's Towing being a female-owned and operated business," Compl. ¶ 211, but beyond the fact that DeLuca's Towing is female-owned and all other towing and salvage companies in the area are male-owned, the complaint has failed to articulate any facts whatsoever to support a *plausible* claim that DeLuca's Towing was indeed treated differently from similarly situated comparators. The bald assertion that male or male-owned towers and salvors were treated in a dissimilar manner, without more, does not provide the defendant with the notice required to frame a responsive pleading to DeLuca's Towing's equal protection claim. *See Young v. New Sewickley Twp.*, 160 Fed. App'x 263, 266 (3d Cir. 2005); *see also D'Altilio v. Dover Twp.*, No. 1:06-CV-1931, 2007 WL 2845073, at *8 (M.D. Pa. Sept. 26, 2007) ("[T]he plaintiff must allege 'occasions or circumstances' of differential treatment."). The complaint has failed to allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see also Earle Asphalt*, 2023 WL 8711815, at *1 (quoting *Twombly*). Moreover, "even if [the complaint] were deemed sufficient to suggest differential treatment, it lacks any factual basis for an inference that [the plaintiff] was treated differently because of [her] gender." *Burnett v. Springfield Twp.*, Civil Action No. 13-1646, 2014 WL 3109963, at *8 (E.D. Pa. July 8, 2014); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) (upholding dismissal of complaint that "does not contain any factual allegation sufficient to plausibly suggest [the defendants'] discriminatory state of mind").

Accordingly, DeLuca's Towing's § 1983 sex-discrimination equal protection claim against the City, set forth in Count V of the complaint, will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### I. Section 1985(3) Civil Rights Conspiracy Claim Against the City

In Count VI, DeLuca's Towing asserts a § 1985(3) conspiracy to violate civil rights claim against the City based on its refusal to complete statutorily mandated salvage paperwork

for DeLuca's Towing, preventing the business from disposing of abandoned vehicles it had towed to and stored on its property, causing financial losses in excess of $2.7 million. The plaintiffs allege that the City and the individual municipal defendants conspired to deprive DeLuca's Towing of its equal protection rights by refusing to complete the statutorily mandated salvage paperwork because DeLuca's Towing is a female-owned business.[23]

**\*15** "[F]or purposes of section 1985(3), a municipality and its officials are considered a single entity which cannot conspire with itself." *Suber v. Guinta*, 902 F. Supp. 2d 591, 608 (E.D. Pa. 2012). "Nonetheless, under the intracorporate conspiracy doctrine, a section 1985(3) conspiracy between a municipality and one of its employees may be maintained to the extent that liability is asserted against the employee in his individual, rather than official, capacity." *Id.* But, as addressed above, all personal-capacity claims against the individual municipal defendants have been dismissed.

Moreover, "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Min. Co.*, 615 F.3d at 178. As we have observed above, a sufficient pleading therefore must include " 'enough factual matter (taken as true) to suggest that an agreement was made,' [or] in other words, 'plausible grounds to infer an agreement.' " *Id.* (quoting *Twombly*, 550 U.S. at 556). Much as with the plaintiffs' claims against Paul's Towing, the complaint simply fails to allege any specific facts to suggest the existence of a conspiratorial agreement between the City and any of its officials or employees, relying on conclusory allegations only.

Accordingly, DeLuca's Towing's § 1985(3) civil rights conspiracy claim against the City, set forth in Count VI of the complaint, will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### J. Paperwork-Related Due Process Claims Against the City

In Counts VII and VIII, DeLuca's Towing has asserted § 1983 procedural and substantive due process claims against the City based on the City's alleged refusal to complete statutorily mandated salvage paperwork. In support, the complaint alleges that, on an unspecified number of occasions and on unspecified dates between 2016 and 2023,[24] the City refused to complete statutorily mandated salvage paperwork

for DeLuca's Towing. This course of conduct allegedly culminated in an appearance by Cynthia DeLuca at a city council meeting on March 28, 2023, in which she demanded that the council take action to direct that City officials complete the salvage paperwork submitted by DeLuca's Towing. With respect to its substantive due process claim, DeLuca's Towing further alleges that the City's refusal to complete salvage paperwork impinged on the use of its land by leaving numerous abandoned vehicles stranded there.

The defendants seek to interpose a statute of limitations defense, arguing that, in light of the City's exclusive municipal towing contract with Paul's Towing and concurrent termination of all other municipal towing agreements in February 2020, the complaint has failed to allege the occurrence of any deprivation of a protected property interest within the applicable two-year limitations period—that is, on or after March 20, 2023.[25] *See Bougher*, 882 F.2d at 78–79 (citing 42 Pa. Cons. Stat. Ann. § 5524). In response, the plaintiffs have argued that, notwithstanding the complete cessation of all *municipal* towing service requests to DeLuca's Towing after the City entered into its exclusive towing services contract with Paul's Towing, the City continued to refuse to process salvage paperwork for abandoned vehicles that DeLuca's Towing towed at the request of its private, nonparty customers.[26]

**\*16** But beyond vague and conclusory allegations that the City failed to complete statutorily mandated salvage paperwork for DeLuca's Towing an unspecified number of times over a seven-year period—with only the last nine days of that period falling within the applicable statutory limitations period—the complaint has failed to plausibly allege the occurrence of events within the applicable limitations period to support a plausible procedural or substantive due process claim. The complaint does not allege that, at any time, DeLuca's Towing received a request to tow any particular abandoned vehicle from private property, took possession of any particular abandoned vehicle from private property, or requested that Hazleton police complete salvage paperwork for any such abandoned vehicle, nor does it allege that any such particular request was denied by police or other City officials. The complaint also does not allege any specific facts to support its conclusory allegation that its land was rendered unusable by an accumulation of vehicles caused by the City.

Accordingly, DeLuca's Towing's § 1983 salvage paperwork-related procedural and substantive due process claims against the City, set forth in Counts VII and VIII of the complaint, will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).[27]

### K. Leave to Amend

The Third Circuit has instructed that, if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile, *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). It is not clear, however, that amendment would be futile, nor is there any basis to believe that it would be inequitable. Therefore, the complaint will be dismissed with leave to amend.

### L. State-Law Tort Claims

In Counts III, IV, and IX the plaintiffs have asserted state common law claims of unlawful restraint of trade, tortious interference with prospective economic advantage, and unjust enrichment. Where a district court has dismissed all claims over which it had original jurisdiction, the court may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3). Whether the court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7. Upon consideration of these factors and the record before us, we find nothing to distinguish this from the usual case. Therefore, the remaining state-law claims will be dismissed *without prejudice* pursuant to 28 U.S.C. § 1367(c)(3).

### III. CONCLUSION

For the foregoing reasons, the defendants' motions to dismiss will be granted. All claims by DeLuca's Towing concerning the 2019 and 2023 exclusive towing contract RFP processes will be dismissed for lack of Article III standing. The procedural due process claims asserted by Zenier's Towing, will be dismissed as waived and for failure to state a claim upon which relief can be granted. All official-capacity claims

against the individual municipal defendants will be dismissed as redundant or duplicative of the plaintiffs' claims against their municipal employer, City of Hazleton, pursuant to the court's inherent authority to control its docket and avoid duplicative claims. All remaining claims will be dismissed with respect to all individual defendants in their personal capacity as improper shotgun pleading and for failure to state a claim upon which relief can be granted. The § 1983 "class of one" equal protection claim asserted by Zenier's Towing will be dismissed for failure to state a claim upon which relief can be granted. The § 1983 gender-based equal protection claim, § 1985(3) civil rights conspiracy claim, and paperwork-related § 1983 procedural and substantive

due process claims asserted by DeLuca's Towing will be dismissed for failure to state a claim upon which relief can be granted. The plaintiffs' remaining state-law claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). The plaintiffs will be granted leave to file an amended complaint, if they should so desire.

**\*17** An appropriate order follows.

**All Citations**

Slip Copy, 2026 WL 852013

---

## Footnotes

1       Although the complaint alleges that DeLuca's Auto Repair Inc. is a "defunct" corporation, it does not allege that the corporation has been formally dissolved, and we note that the corporation remains marked as "active" in the state corporations database. *See* Pa. Dep't of State, Business Search, https://file.dos.pa.gov/search/business (File No. 3997465) (last visited Mar. 21, 2026). *See generally* Fed. R. Evid. 201; *Stein v. Matheson,* 539 F. Supp. 3d 463, 471 & n.4 (E.D. Pa. 2021) (taking judicial notice of publicly available state corporation records).

2       Counsel for Paul's Towing has advised the court that the complaint has misidentified these defendants as Paul Sateach Sr. and Paul Sateach Jr. *See, e.g.*, Doc. 9. Their identities are not otherwise in dispute.

3       With respect to Count III, asserting a common law restraint of trade claim, the plaintiffs seek injunctive relief only.

4       Counts I, II, and III are based entirely on the 2019 and 2023 RFP processes, while Counts IV, V, and VI rely on additional allegedly wrongful conduct as well.

5       The "imminent injury" alternative relates to prospective relief, but DeLuca's Towing is alleged to have ceased business operations, and the complaint does not allege any intent to make a future bid on a towing contract with the City of Hazleton.

6       Thus, DeLuca's Towing has failed to establish Article III standing with respect to Count I (§ 1983 procedural due process), Count II (§ 1983 class-of-one equal protection), and Count III (common law restraint of trade), each of which is based exclusively on the 2019 and 2023 contracting processes, and Count IV (common law tortious interference) and Count VI (§ 1985(3) conspiracy to violate equal protection rights) to the extent they are based on the 2019 and 2023 contracting processes.

7       We resort to this discretionary authority here because Rule 12(b)(6) is not an appropriate vehicle for dismissal of redundant or duplicative claims. *See generally Satterfield*, 12 F. Supp. 2d at 432 ("[A]lthough we are not required to do so, we will exercise our discretion and grant the [motion] to dismiss the official capacity claims ...."); *Crighton v. Schuylkill Cnty.*, 882 F. Supp. 411, 415 (E.D. Pa. 1995) ("Motions to dismiss pursuant to Rule 12(b)(6) test the validity of the compliant. A claim that is redundant is not necessarily invalid.").

8    We note that the complaint defines "police defendants" in passing to include both the City's police department and its code enforcement office. *See* Compl. ¶ 105.

9    We note that the complaint identifies ten individual defendants who serve or served in the City's police department.

10    The complaint identifies two individual defendants who serve as code enforcement officers. It also identifies two individual defendants who serve as right-to-know officers, but it is unclear to the court whether they serve in the code enforcement office, which underscores the point at issue.

11    Not always, but often when referencing the City's "officials," the complaint has included an additional clause clarifying that these officials "include" the current mayor, the former mayor, and all councilpersons—a total of eight individual defendants, none of whom are alleged to have taken any particular action in any of these allegations.

12    As noted above, the plaintiffs have waived their § 1983 procedural due process claims (Count I), and all claims by DeLuca's Towing concerning the 2019 and 2023 contracting processes have been dismissed for lack of standing, including the § 1983 "class of one" equal protection claim (Count II), the § 1983 sex discrimination claim (Count V), and the § 1985(3) conspiracy to violate equal protection rights claim (Count VI) asserted against Paul's Towing by DeLuca's Towing. The § 1983 procedural due process and substantive due process claims asserted against the municipal defendants by DeLuca's Towing in Counts VII and VIII expressly exclude Paul's Towing as a defendant.

13    All claims against the individual principals of Paul's Towing—Paul F. Sateach and Paul J. Sateach—have been dismissed on other grounds, but as private individuals, the rationale stated herein would apply to them as well.

14    In their motion papers, the parties have indicated that Paul F. Sateach and Paul J. Sateach are cousins to Jack Mundie, and that Mundie, in turn, is a cousin of Mayor Jeff Cusat.

15    *See supra* note 12.

16    In their brief in opposition, the plaintiffs argue only that they have alleged a long-running civil conspiracy, and thus the limitations period should be tolled until the last act in furtherance of that alleged conspiracy occurred on March 28, 2023—the date when Cynthia DeLuca attended a city council meeting to address the City's failure to complete salvage paperwork for DeLuca's Towing. But the plaintiffs have pleaded no facts to support their numerous, but entirely conclusory, allegations of a civil conspiracy among the numerous defendants. *See Boseski v. N. Arlington Mun.*, 621 Fed. App'x 131, 134 (3d Cir. 2015) (holding that a plaintiff's "unsupported assertions that the defendants engaged in a 'continuous tort' and conspiracy are insufficient to justify additional tolling"); *Thornton v. Beaver Cnty.*, No. 2:23-cv-00198, 2025 WL 2748809, at *11 (W.D. Pa. Aug. 21, 2025) ("If the [complaint] contained plausible factual support for its allegations of conspiracy at all, perhaps the continuing violation doctrine could, in theory, be applicable. But because there is no support other than conclusory allegations that a conspiracy existed or that these discrete actions were somehow actually connected, the [complaint] fails to allege sufficient plausible facts demonstrating that the continuing violation doctrine could toll any of the statutes of limitations ...."), *appeal filed*, No. 25-2840 (3d Cir. Sept. 25, 2025).

17    Notably, the complaint does not allege that the Sateaches are themselves related to Cusat, and it does not allege with any specificity the nature of the familial relationships. As we have noted in the margin above, the parties' motion papers indicate that the Sateaches are cousins to Mundie, and Mundie is himself a cousin to Cusat. *See supra* note 14.

18    We note that the parties briefs indicate that Zenier's offered to pay significantly less than Paul's Towing in competing for the 2020 exclusive towing contract. *See* Paul's Towing Br. Supp. 19 ("Zenier's offered to pay $35,000, Paul's offered to pay $85,000[.]"), Doc. 21. Although Zenier's Towing was one of two companies that competed against Paul's Towing for the 2023 exclusive towing contract, the record does not reflect any specific monetary offer Zenier's Towing may have made in connection with that process.

19    We note that the defendants have also persuasively argued that the City's selection of an exclusive municipal towing services contractor may constitute the sort of discretionary decision that is not amenable to a "class of one" equal protection claim. *See, e.g., Luna Collision*, 2026 WL 693921, at *6–8; *Mary Beth's Towing*, 2018 WL 1784556, at *8–9; *Hruska Plumbing Co. v. Terrick*, No. 2:13-cv-00064, 2013 WL 1776278, at *5 n.3 (W.D. Pa. Apr. 25, 2013) (noting, in considering a "class of one" equal protection claim brought against a municipality by a plumbing contractor, that a "class-of-one equal protection claim is not cognizable in the context of public employment"). But we do not reach a decision on this particular issue, having concluded that the complaint reveals a rational basis for the City's 2023 contracting decision.

20    Although the complaint alleges that the allegedly discriminatory course of conduct began in 2016, it expressly disclaims any claim for damages prior to 2019, due to a 2024 settlement entered into with respect to a mandamus action brought by DeLuca's Towing in 2019, based on the City's failure to complete statutorily mandated salvage paperwork during calendar years 2016, 2017, and 2018.

21    Although not clearly alleged, it appears that DeLuca's Towing ultimately received the requested business license renewal with the assistance of the state legislators.

22    We note that the complaint does not allege that the City improperly denied any of these unspecified right-to-know requests, or that DeLuca's Towing sought administrative or state judicial review of any of these denials.

23    As originally pleaded, DeLuca's Towing also asserted this claim against Paul's Towing based on its role in the 2019 and 2023 contracting processes, but that portion of Count VI has been dismissed for lack of standing.

24    *See supra* note 20.

25    The complaint in this action was filed on March 20, 2025.

26    State law provides that a vehicle may be presumed abandoned if left on private property without consent of the owner of the property for more than 24 hours. *See* 75 Pa. Cons. Stat. Ann. § 102 (defining "abandoned vehicle").

27    We note that the defendants have also persuasively argued that the complaint has failed to allege sufficient facts to demonstrate that the City's alleged misconduct rose to the level of "conscience-shocking" behavior. *See, e.g., Pompey Coal Co. v. Borough of Jessup*, No. 3:20-cv-00358, 2021 WL 1212586, at *8 n.13 (M.D. Pa. Mar. 31, 2021) (noting that "personal or political animus is not sufficient to meet the 'shocks the conscience' standard"). But we do not reach a decision on this particular issue, having concluded that the complaint otherwise fails to plausibly allege a substantive due process claim.

**End of Document**                                   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.    15

**4**

2025 WL 3678433
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Michael HICKSON

v.

PECO ENERGY COMPANY, et al.

CIVIL ACTION No. 25-02980
|
Signed December 17, 2025

**Attorneys and Law Firms**

Michael Hickson, Philadelphia, PA, Pro Se.

Diana P. Cortes, Katherine Helen Monks, Morgan, Lewis & Bockius LLP, Philadelphia, PA, for Peco Energy Company, Exelon Corporation, Natural Lands, Exelon Foundation, The Rock Creek Group/Community Impact Capital Fund, Patrick Noonan.

Adrienne Box, Office of the Attorney General, Philadelphia, PA, for Pennsylvania Public Utility Commission, Gladys Brown Dutrieville, Tom Wol & Successor.

Michael Wu-Kung Pfautz, City of Philadelphia Law Department, Philadelphia, PA, for Jim Kenney & Successor.

**MEMORANDUM**

McHUGH, United States District Judge

**\*1**  *Pro se* [1] Plaintiff Michael Hickson initiated this civil action against several defendants by filing a Complaint alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983, unauthorized use of personal information, breaches of the federal tax code, and various state law violations. *See* Compl., ECF 1. Defendants have moved to dismiss, and those motions will be granted.

**I. Facts as pled**

Mr. Hickson entered into a contract with PECO Energy Company ("PECO") for electric utility services for his Philadelphia residence in February 2022. Compl. ¶ 12. He alleges that PECO did not disclose the full terms of the contract, notably that PECO would use customers' personal information for commercial purposes. *Id.* ¶¶ 13–

15. Additionally, Mr. Hickson claims that PECO failed to obtain his signature "on the required SSA form" in violation of federal privacy law. *Id.* ¶¶ 17–18. He quickly became overdue on his utility bill and received a shut-off notice on May 24, 2022 due to his balance of $1,077.32. *See id.* ¶¶ 31–32. Mr. Hickson alleges that he was enrolled in PECO's Customer Assistance Program as of March 2022 and claims his enrollment should have prevented any collection activity by PECO. *See id.* ¶¶ 19–21, 33. The Complaint also alleges that PECO and its parent company, Exelon, take customer funds and donate them to nonprofits including Natural Lands, instead of using funds to assist low-income and elderly customers like Mr. Hickson. *See id.* ¶¶ 25–29.

**\*2**  On June 9, 2025, Mr. Hickson initiated this action against PECO, Exelon Corporation ("Exelon"), Exelon Foundation, RockCreek Group, Community Impact Capital Fund ("CICF"), [2] former PECO officer Patrick Noonan, Natural Lands, Pennsylvania Public Utility Commission ("PUC"), former PUC Commissioner and Chair Gladys Brown Dutrieville, former Governor Tom Wolf and his successor, and former Mayor Jim Kenney and his successor. *See* Compl. ¶¶ 1–11. Mr. Hickson's claims and causes of action are difficult to parse; I will address each in the sections that follow. His request for relief includes $10,000,000 in monetary damages as well as compensatory and punitive damages, preliminary and permanent injunctions against Defendants, an order commanding PECO to disclose all usage of Mr. Hickson's personal information, and an order commanding PECO and Exelon to comply with "applicable federal tax requirements." *Id.* at 6–7.

Mr. Hickson lists the following claims in his Complaint: violations of the Commerce Clause and contract rights against PECO and Exelon for failure to fully disclose contract terms (Count I); violation of his Seventh Amendment right to trial by jury against all Defendants for pursuit of collection activities without affording due process (Count II); violations of nonprofit tax-exempt status against Exelon Foundation, CICF, and Natural Lands, and private inurement against those Defendants as well as PECO and Exelon for "divert[ing]" customer funds to nonprofits (Count III); corporate malfeasance and improper profit distribution against PECO for failing to obtain consent before "commercializing customer personal information" (Count IV); Unrelated Business Income Tax (UBIT) violations against PECO and Exelon for failure to report and pay taxes on the sale of customer information (Count V); violations of federal privacy rights and unauthorized commercial

exploitation of personal information against PECO for using his Social Security Number without consent (Count VI); and, "civil rights violations" pursuant to 42 U.S.C. § 1983 against "individual Defendants" for deprivation of federal rights (Count VII).

All Defendants have moved to dismiss, forming three groups: Commonwealth Defendants (PUC, Brown Dutrieville, former Governor Wolf, and Governor Josh Shapiro), City Defendants (former Mayor Kenney and Mayor Charelle Parker), and Private Defendants (PECO, Exelon, Exelon Foundation, RockCreek Group, CICF, Patrick Noonan, and Natural Lands). *See* ECF 19, ECF 20, ECF 22. Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, as well as under Rule 12(b)(6) for failure to state a claim. *See* Priv. Defs.' Mot. to Dismiss 10–11, ECF 22-1; Commw. Defs.' Mot. to Dismiss 3, ECF 19.

Plaintiff was granted an extension until December 13, 2025, to respond to the motions, ECF 25, but has not done so.

## II. Standard of Review

A facial challenge under Rule 12(b)(1) contests "subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to consider the allegations of the complaint as true." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (cleaned up). The same standard applies under Rule 12(b)(6), as set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Because Mr. Hickson is proceeding *pro se*, I construe his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, " 'pro se litigants still must allege sufficient facts in their complaints to support a claim.' " *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)).

## III. Discussion

### A. Federal claims brought under § 1983

**\*3** Mr. Hickson appears to allege two constitutional claims under 42 U.S.C. § 1983, one under the Commerce Clause, and one under the Seventh Amendment. As an initial matter, to state a claim under § 1983, a plaintiff must show that an alleged deprivation of a constitutional right "was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

Necessarily therefore, the claims lack validity as to the Private Defendants.[3] As to the governmental officials sued, the claims are untimely.

The timeliness of a § 1983 claim is governed by the limitations period applicable to personal injury actions of the state in which the cause of action arose. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). The Pennsylvania statute of limitations for a personal injury action is two years. *Id.* at 634 (citing 42 Pa. Cons. Stat. § 5524(2)). Mr. Hickson's claims concern events occurring between February and May 2022 and he filed the Complaint on June 9, 2025. This is well beyond the two-year period and the Complaint is thus untimely on its face. *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) ("A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint."). Mr. Hickson's other federal claims brought pursuant to § 1983 are therefore also untimely.

I will therefore grant Defendants' motions to dismiss the Commerce Clause claims embodied in Count I, as well as Count II and Count VII, and do so with prejudice because any amendment would be futile. *See United States ex rel. Schumann v. AstraZeneca Pharm. LP*, 769 F.3d 837, 849 (3d Cir. 2014) (finding the court "may deny leave to amend a complaint where it is apparent ... the amendment would be futile" (internal citations omitted)).

### B. Federal "Privacy Rights and Unauthorized Use of Personal Info" claims

Count VI contends that PECO lacked authorization to use Mr. Hickson's personal information, including his Social Security number, in violation of "federal privacy laws and regulations." Compl. ¶¶ 57–60. Mr. Hickson claims to have been injured by "PECO's unauthorized commercial exploitation of his personal information." *Id.* ¶ 60.

**\*4** I must construe all *pro se* allegations liberally, including applying relevant law even where the litigant fails to specifically name it. *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002). But "this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support." *Shabazz v. Delaware Cnty. Prob. Dep't*, No. 25-CV-5039, 2025 WL 2936891, at \*4 (E.D. Pa. Oct. 15, 2025); *see also Mala*, 704 F.3d at 245 ("*Pro se* litigants still must allege sufficient facts in their complaints to support a claim."). A broad appeal to "federal statutory

requirements" does not allow me to decipher whether there is any colorable claim under federal law. I will therefore dismiss, without prejudice, Count VI for failure to state a claim pursuant to Rule 12(b)(6). Plaintiff is granted 14 days within which to file an amended complaint as to this Count only, identifying specific federal statutes and explaining with plausible allegations how PECO violated a statute. Plaintiff is reminded that the provisions of Rule 11 of the Federal Rules of Civil Procedure apply to litigants as well as lawyers.

### C. Federal tax law claims

Mr. Hickson claims in Count III that CICF, Exelon Foundation, and Natural Lands violate their nonprofit tax-exempt status by receiving "divert[ed]" customer funds from Exelon and PECO while PECO "pursues aggressive collection activities against vulnerable customers." Compl. ¶¶ 42–46. In Count V he contends that PECO and Exelon "engage in commercial activities related to the sale and exploitation of customer personal information that constitute unrelated business income subject to federal taxation." *Id.* ¶¶ 52–56. Generally, there exists no private right of action to enforce the Internal Revenue Code—such enforcement is within the realm of the Internal Revenue Service ("IRS"). *See United States v. LaSalle Nat. Bank*, 437 U.S. 298, 308, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978) ("The Secretary of the Treasury and the Commissioner of Internal Revenue are charged with the responsibility of administering and enforcing the Internal Revenue Code."); *see also Brodsky v.*

*Carter*, No. 15-CV-3469, 2015 WL 13746671, at *12, 2015 U.S. Dist. LEXIS 169104, at *39 (S.D.N.Y. Dec. 15, 2015) (finding no private right of action for "unrelated business income" claims).

Counts III and V are therefore dismissed with prejudice, as amendment would be futile.

### D. State law claims

To the extent that the remaining claims—violation of contract rights, corporate malfeasance, and improper profit distribution in Counts I and IV—might be construed as an attempt to invoke state law, *see* Compl. ¶¶ 35–38, 47–51, I decline to exercise supplemental jurisdiction. Nor is there diversity jurisdiction, as several defendants, like Mr. Hickson, are citizens of Pennsylvania, and under the diversity statute "no plaintiff [may] be a citizen of the same state as any defendant." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quotation omitted).

### IV. Conclusion

For the reasons set forth above, Defendants' Motions to Dismiss will be granted. An appropriate order follows.

### All Citations

Slip Copy, 2025 WL 3678433

---

### Footnotes

1        On July 23, I issued a Supplemental Order striking from the record a document filed by Orlando Acosta. *See* ECF 15. Though Mr. Acosta purported to represent Mr. Hickson, this was impermissible because Mr. Acosta is not an attorney and therefore cannot represent another person in court—a fact of which he is well aware given previous admonishment by both the Third Circuit and myself. *See Miller v. Burt*, 765 F. App'x 834, 836 (3d Cir. 2019); *Miller v. Exelon*, No. 19-cv-0231, 2019 WL 952273, at *3 (E.D. Pa. Feb. 26, 2019) (McHugh, J.), *aff'd per curiam*, 775 F. App'x 37 (3d Cir. 2019). Mr. Hickson subsequently filed an exhibit consisting of a screenshot of an email from Mr. Acosta. *See* ECF 16. In the email, Mr. Acosta asserts himself as duly representing Mr. Hickson because he is "the power of attorney" or, in the alternative, because "[Mr. Hickson's] Peco account is under [Mr. Acosta's] LLC." *Id.*

As I noted in *Miller v. Exelon*, Mr. Acosta is not an attorney and therefore may not represent another person in federal court, regardless of any purported title of "power of attorney." *See Williams v. United States*, 477 F. App'x 9, 11 (3d Cir. 2012) (per curiam) (noting that power of attorney over another person's affairs "does not permit [one] to represent [another] ... in federal court"); *Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876,

878 (3d Cir. 1991) (finding, in general, a plaintiff who is not an attorney may not bring claims on behalf of another in federal court).

Mr. Acosta's latter assertion is similarly misguided. Even if Mr. Hickson's PECO account is under Mr. Acosta's LLC, corporations and partnerships—including LLCs—must be represented by an attorney in federal court. *See Simbraw, Inc. v. United States*, 367 F.2d 373, 373 (3d Cir. 1966) (per curiam) (finding that the non-attorney president of a corporation could not represent the corporation in federal court because representatives "must be attorneys at law who have been admitted to practice"); *Rowland v. Ca. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02, 113 S.Ct. 716, 121 L.Ed.2d 656 (1993) ("It has been the law for the better part of two centuries ... that a corporation may appear in the federal courts only through licensed counsel."); *Osborn v. Bank of U.S.*, 22 U.S. 9 Wheat. 738, 745, 6 L.Ed. 204 (1824) (finding that a corporation "must always appear by attorney").

2    The Complaint names "The Rock Creek Group/Community Impact Capital Fund" as a single entity. *See* Compl. ¶ 6. Defendants assert that these are separate entities, and that the former's name is "RockCreek Group". *See* Private Defs.' Mot. to Dismiss 1 n.2, ECF 22-1. I will refer to them accordingly.

3    Mr. Hickson does not explicitly cite § 1983 as a vehicle to sue PECO, Exelon, Exelon Foundation, RockCreek Group, CICF, Patrick Noonan, and Natural Lands for violation of federal rights, yet this is the only reasonable inference from his Complaint. To the extent that he brings claims against these Defendants pursuant to § 1983, such claims are impermissible insofar as Mr. Hickson fails to allege that these private actors are transformed into state actors by any actions they may have taken under color of state law, as § 1983 requires. *See Leshko v. Servis*, 423 F.3d 337, 340 (3d. Cir 2005) (concluding that a private party undertaking "an activity that is significantly encouraged by the state or in which the state acts as a joint participant" is a state actor under § 1983).

Courts have repeatedly held that PECO is not a state actor. *See, e.g., Zapata v. PECO*, No. 17-3699, 2017 WL 4075265 at *2, 2017 U.S. Dist. LEXIS 148949 at *5 (E.D. Pa. Sep. 13, 2017), *aff'd*, 712 F. App'x 216 (3d Cir. 2018), *cert. denied*, 586 U.S. 1156, 139 S.Ct. 1182, 203 L.Ed.2d 217 (2019); *Guyton v. PECO*, No. 18-2547, 2018 WL 10016428 at *1, 2018 U.S. Dist. LEXIS 231015 at *2 (E.D. Pa. Aug. 24, 2018), *aff'd*, 770 F. App'x 623 (3d Cir. 2019); *see also Jackson v. Metro. Edison Co.*, 419 U.S. 345, 358, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (finding no state action where utility company "was a heavily regulated, privately owned utility ... [and] elected to terminate service to petitioner in a manner which the Pennsylvania Public Utility Commission found permissible under state law").

---

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

**5**

2010 WL 2196429
Only the Westlaw citation is currently available.
United States District Court,
M.D. Pennsylvania.

Wendy McCARTNEY, Plaintiff
v.
PENNSYLVANIA STATE POLICE, Jeffrey
Miller, Daniel Hawk, Dennis Smolko, Earl
Killion, Charles Strobert, Thomas Mannion,
Thomas Butler, Patrick B. Gebhart, Defendant.

Civil Action No. 1:09–CV–1817.
|
May 27, 2010.

**Attorneys and Law Firms**

Don A. Bailey, Harrisburg, PA, for Plaintiff.

Kenneth L. Joel, Office of Attorney General, Harrisburg, PA, for Defendant.

### *MEMORANDUM*

CHRISTOPHER C. CONNER, District Judge.

**\*1** This is an employment discrimination action brought by plaintiff Wendy McCartney ("McCartney") against her former employer, defendant the Pennsylvania State Police ("PSP"), and several current and former employees of that agency. McCartney contends that each of the individual defendants engaged in gender discrimination in violation of the Equal Protection Clause and carried out acts of retaliation in contravention of the First Amendment. In addition, McCartney claims that the PSP fostered a hostile work environment, discriminated against her on the basis of gender and age, and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17, and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. CONS.STAT . §§ 951–963. Presently before the court is a partial motion to dismiss, filed collectively by all defendants. (*See* Doc. 7.) For the reasons that follow, the motion will be granted.

**I. *Statement of Facts*** [1]

The factual allegations contained in McCartney's complaint are sparse and can be summarized expeditiously. In 2001, the PSP hired McCartney as a Liquor Enforcement Officer. (Doc. 1 ¶ 17.) From the date of her hire to the time of her termination, McCartney was the sole female occupying such a position within the department. (*Id.* ¶ 18.) McCartney claims that she was regularly excluded from employee meetings and office communications, and subjected to commentary and humor that was disrespectful toward the female gender. (*See id.* ¶ 19.) She further alleges-albeit without any temporal or factual specificity-that she was denied opportunities for advancement while similarly situated male officers were not. (*See id.*) Finally, McCartney claims that she was involved romantically with a male sergeant and was "targeted" by other officers as a result of this relationship. [2] (*See id.* ¶ 20 .) At some point-presumably in 2005, though the complaint is unclear-McCartney was purportedly forced to resign. (*See id.* ¶ 18.) The complaint does not describe which of the defendant officers allegedly perpetrated any of the complained-of acts, nor does it supply any factual detail elaborating on the nature of the acts.

McCartney commenced the instant action by filing a complaint on September 21, 2009. (*See* Doc. 1.) She alleges that each of the individual defendants discriminated against her on the basis of her gender, and retaliated against her for speaking out against such treatment. In addition, McCartney accuses the PSP of fostering a hostile work environment, gender and age discrimination, and retaliation, all in contravention of Title VII and the PHRA. On November 25, 2009, defendants collectively filed a partial motion to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. (*See* Doc. 7.) This motion has been fully briefed and is ripe for disposition.

**II. *Standard of Review***

**\*2** Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1). A motion to dismiss under Rule 12(b) (1) therefore challenges the power of a federal court to hear a claim or case. *See Petruska v. Gannon Univ.,* 462 F.3d 294, 302 (3d Cir.2006). In the face of a 12(b)(1) motion, the plaintiff has the burden to "convince the court it has jurisdiction." *Gould Elecs., Inc. v. United States,* 220 F.3d 169, 178 (3d Cir.2000); *see also Kehr Packages v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991) ("When

subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.").

Motions under Rule 12(b)(1) may take one of two forms. A "facial" attack "contests the sufficiency of the pleadings." *Common Cause of Pa. v. Pennsylvania,* 558 F.3d 249, 257 (3d Cir.2009) (quoting *Taliaferro v. Darby Twp. Zoning Bd.,* 458 F.3d 181, 188 (3d Cir.2006)). The court assumes the veracity of the allegations in the complaint but must examine the pleadings to ascertain whether they present an action within the court's jurisdiction. *United States ex rel. Atkinson v. Pa. Shipbuilding Co.,* 473 F.3d 506, 514 (3d Cir.2007). The court should grant such a motion only if it appears with certainty that the exercise of jurisdiction would be improper. *Empire Kosher Poultry, Inc. v. United Food & Commercial Workers Health & Welfare Fund of Ne. Pa.,* 285 F.Supp.2d 573, 577 (M.D.Pa.2003); *see also Kehr Packages,* 926 F.2d at 1408–09. If the complaint is merely deficient as pleaded, the court should grant leave to amend before dismissal with prejudice. *See Shane v. Fauver,* 213 F.3d 113, 116–17 (3d Cir.2000).

In contrast, a "factual" attack argues that, although the pleadings facially satisfy jurisdictional prerequisites, one or more of the allegations is untrue, rendering the controversy outside of the court's jurisdiction. *Carpet Group Int'l v. Oriental Rug Imps. Ass'n, Inc.,* 227 F.3d 62, 69 (3d Cir.2000); *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). In such circumstances, the court is both authorized and required to evaluate the merits of the disputed allegations because "the trial court's ... very power to hear the case" is at issue. *Mortensen,* 549 F.2d at 891; *see also Atkinson,* 473 F.3d at 514. In the motion *sub judice,* defendants present a facial attack on the court's subject matter jurisdiction, (*see* Doc. 8 at 5 n. 1); the court will therefore limit its review to the sufficiency of the pleadings.

Rule 12(b) (6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Gelman v. State Farm Mut. Auto. Ins. Co.,* 583 F.3d 187, 190 (3d Cir.2009) (quoting *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir.2008)); *see also Kanter v. Barella,* 489 F.3d 170, 177 (3d Cir.2007) (quoting *Evancho v. Fisher,* 423 F.3d 347, 350 (3d Cir.2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n. 2 (3d Cir.1994); *see also In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997).

**\*3** Federal notice and pleading rules require the complaint to provide "the defendant notice of what the ... claim is and the grounds upon which it rests." *Phillips,* 515 F.3d at 232 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a two-step inquiry. In the first step, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210–11 (3d Cir.2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 556); *Twombly,* 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* —— U.S. at ——, 129 S.Ct. at 1949. When the complaint fails to establish defendant liability, however, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. *See Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir.2002); *Shane,* 213 F.3d at 116–17.

**III.** *Discussion*

In the present motion, the PSP moves to dismiss McCartney's PHRA and age discrimination claims as jurisdictionally barred by the Eleventh Amendment. In addition, the individual defendants seek dismissal of the claims arising under § 1983 for failure to state a *prima facie* claim for federal tort relief, and because the allegations were not levied within the applicable limitations period. The court will address defendants' grounds for dismissal *seriatim.*

**A.** *Eleventh Amendment Immunity*

In Count Two of her complaint, McCartney alleges that the PSP violated the PHRA and engaged in discrimination on

the basis of age. Both claims are jurisdictionally barred by the Eleventh Amendment, which precludes private federal litigation against a state and its agencies.[3],[4] *Hans v. Louisiana,* 134 U.S. 1, 15–16, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *see also Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 72–73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *Lombardo v. Pennsylvania,* 540 F.3d 190, 194–95 (3d Cir.2008); *Hill v. Borough of Kutztown,* 455 F.3d 225, 247 n. 30 (3d Cir.2006) (explaining that Congress did not abrogate the states' sovereign immunity by passage of the Age Discrimination in Employment Act); *Boone v. Pa. Office of Vocational Rehab.,* 373 F.Supp.2d 484, 495–96 (M.D.Pa.2005) (holding that state agencies maintain sovereign immunity from PHRA suits in federal court). Accordingly, the court will grant the PSP's motion to dismiss the PHRA and age discrimination claims. Leave to amend will be denied as futile. *See Grayson,* 293 F.3d at 108 (observing that the district court may exercise its discretion to dismiss a claim with prejudice when leave to amend would be futile).

#### B. *Section 1983 Claims*

**\*4** Section 1983 affords a right to relief where official action causes a "deprivation of rights protected by the Constitution." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The statute is not an independent source of substantive rights, but merely "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." *Kopec v. Tate,* 361 F.3d 772, 775–76 (3d Cir.2004); *see also Gonzaga Univ. v. Doe,* 536 U.S. 273, 284–85, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). To establish a claim under § 1983, the plaintiff must demonstrate (1) the transgression of a constitutional right, and (2) that a "person acting under the color of state law" is responsible for the alleged injury. *Kneipp v. Tedder,* 95 F.3d 1199, 1204 (3d Cir.1996); *Collins v. City of Harker Heights,* 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). In the matter *sub judice,* McCartney contends that she was denied the equal protection of the laws on the basis of her gender in contravention of the Fourteenth Amendment, and that she suffered unlawful retaliation in violation of the First Amendment.

For a § 1983 claim to survive a motion to dismiss, a plaintiff must allege that each and every defendant was personally involved in the purported wrongdoing. *Evancho,* 423 F.3d at 353. A defendant's personal involvement in a constitutional violation may be established via allegations of "personal direction," "actual knowledge and acquiescence," or "direct

discrimination." *Id.; see also Andrews v. City of Phila.,* 895 F.2d 1469, 1478 (3d Cir.1990). This court has described the specificity required of a plaintiff's allegations as follows:

> [A]llegations are sufficient to survive a motion to dismiss when they name the individuals responsible, the conduct, the time, and the place of the incident that deprived a plaintiff of his civil rights. Conversely, alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient. Accordingly, a § 1983 complaint must be dismissed when it fails to contain even a remote suggestion that a supervisory defendant had contemporaneous, personal knowledge of the alleged harm and acquiesced in it.

*Ozoroski v. Maue,* Civ. A. No. 1:08–CV–0082, 2009 WL 414272, at *10 (M.D.Pa. Feb. 18, 2009) (quoting *Kirk v. Roan,* 1:04–CV–1990, 2006 WL 2645154, at *3 (M.D.Pa. Sept.14, 2006), *Evancho,* 423 F.3d at 353, and *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)).

Although McCartney has sued a total of nine individual PSP employees, she has not described any individual's alleged conduct or the time or place of the alleged activity. In fact, McCartney's complaint does not even contend that the individual defendants knew about the purported wrongdoing, much less that they participated therein. Thus, her pleading falls far short of the requirement of Federal Rule of Civil Procedure 8 that a pleading provide each "defendant notice of what the ... claim is and the grounds upon which it rests." *Phillips,* 515 F.3d at 232 (quoting *Twombly,* 550 U.S. at 555). Quite simply, there is no way for the individual defendants to answer McCartney's vague allegations. The court will therefore grant the motion to dismiss the claims arising under § 1983, but McCartney will be permitted leave to amend her complaint to plead the personal involvement of each individual to whom she ascribes tortious liability.[5]

#### IV. *Conclusion*

**\*5** For the foregoing reasons, McCartney's PHRA and age discrimination claims shall be dismissed with prejudice. The claims arising under § 1983 shall likewise be dismissed, but McCartney will be permitted leave to amend her complaint in order to allege the personal involvement of each of the named individual defendants.

An appropriate order follows.

### ORDER

AND NOW, this 27th day of May, 2010, upon consideration of the partial motion (Doc. 7) to dismiss, filed collectively by defendants, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The partial motion to dismiss (Doc. 7) is GRANTED. The following claims are DISMISSED:

a. The § 1983 claims appearing in Count One of the complaint and directed against the individual defendants;

b. The PHRA claim appearing in Count Two of the complaint and directed against defendant the Pennsylvania State Police; and

c. The age discrimination claim appearing in Count Two and directed against defendant the Pennsylvania State Police.

2. Plaintiff Wendy McCartney shall be permitted to file, on or before June 15, 2010, an amended complaint that alleges personal involvement on the part of each of the named defendants.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 2196429

---

## Footnotes

1 In accordance with the standard of review for a Rule 12(b)(1) motion to dismiss based upon the sufficiency of the pleadings, and a motion to dismiss pursuant to Rule 12(b)(6), the court will present the facts as alleged in the complaint. *See infra* Part II. Furthermore, those portions of the complaint which consist of no more than legal conclusions or a formulaic recitation of the elements of a cause of action have been disregarded. *Ashcroft v. Iqbal,* ––– U.S. ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

2 McCartney does not elaborate on what she means when she alleges that she was "targeted" by other officers.

3 The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.

4 McCartney's complaint does not specify whether she intended to file suit against the individual defendants in their official capacities as well as their individual capacities. For purposes of the Eleventh Amendment, however, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Thus, even if McCartney had intended to raise such claims, they would be prohibited by the Eleventh Amendment.

5 The individual defendants argue that McCartney's § 1983 claims are time-barred by the statute of limitations governing constitutional tort actions. Civil rights claims are governed by the state statute of limitations

applicable to personal injury actions. See *O'Connor v. City of Newark,* 440 F.3d 125, 127 (3d Cir.2006). In Pennsylvania, the applicable limitations period is two years. See PA. CONS.STAT. § 5524(7); see also *Disabled in Action of Pa. v. Se. Pa. Transp. Auth.,* 539 F.3d 199, 208 (3d Cir.2008). "[U]nder federal law, which governs the accrual of section 1983 claims, the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." *Montgomery v. De Simone,* 159 F.3d 120, 126 (3d Cir.1998) (quoting *Genty v. Resolution Trust Corp.,* 937 F.2d 899, 919 (3d Cir.1991)).

Federal Rule of Civil Procedure 8(c) classifies a statute of limitations claim as an affirmative defense that must be pled in an answer to the complaint. See FED. R. CIV. P. 8(c). Additionally, Rule 12(b) requires that all defenses be asserted in an answer except those expressly enumerated in the rule. See FED. R. CIV. P. 12(b). The Federal Rules do not require a plaintiff to proffer specific allegations regarding the timing of the alleged offense, and Rule 12(b) does not provide for the pre-answer assertion of a limitations defense. See *id.; Wilson v. McVey,* 579 F.Supp.2d 685, 689 (M.D.Pa.2008). Although a district court may dismiss a complaint as time-barred if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations," *Robinson v. Johnson,* 313 F.3d 128, 135 (3d Cir.2002) (quoting *Hanna v. U.S. Vetetrans' Admin. Hosp.,* 514 F.2d 1092, 1094 (3d Cir.1974)), the court declines defendants' invitation to do so. McCartney has not offered detail regarding the particular timing of the alleged offenses, and she is not required to do so at this time. The court finds that the statute of limitations inquiry is better reserved for summary judgment, after a factual record has been developed.

---

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**6**

Case 3:26-cv-00879-JES-DFB    Document 11-2    Filed 05/18/26    Page 42 of 62

Taggart v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2021)

2021 WL 2255875
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Kenneth TAGGART, Plaintiff,
v.
DEUTSCHE BANK NATIONAL
TRUST COMPANY, et al., Defendants.

CIVIL ACTION NO. 20-5503
|
Filed 06/03/2021

**Attorneys and Law Firms**

Joshua Louis Thomas, Joshua L. Thomas & Associates PLLC, Chadds Ford, PA, for Plaintiff.

Edward J. McKee, Evan Barenbaum, Stern & Eisenberg PC, Warrington, PA, for Defendants Deutsche Bank National Trust Company, Stern & Eisenberg, P.C., Specialized Loan Servicing, LLC, Mortgage Electronic Registration Systems Inc.

Diane A. Bettino, Reed Smith LLP, Princeton, NJ, for Defendant Wells Fargo Bank N.A.

**MEMORANDUM**

PAPPERT, District Judge

**\*1** Rather than just make his mortgage payments like other homeowners, serial litigant Kenneth Taggart has wasted judicial resources and his opponents' time and money for more than a decade.[1] This case is the latest involving his property at 45 Heron Road, Holland, PA 18966. *See Taggart v. Morgan Stanley ABS Cap. I Inc.*, No. 16-cv-62, 2016 WL 4076818, at \*4 (E.D. Pa. Aug. 1, 2016); *Taggart v. Northwest Mortgage, Inc., et al.*, No. 09-cv-01281; *Deutsche Bank Nat'l Trust Co. v. Taggart*, No. 11-cv-04668. He raises numerous claims—arising out of a state court foreclosure proceeding —against: (1) Deutsche Bank National Trust Company, as Trustee for Morgan Stanley Abs Capital I Inc. Trust 2007-HE 2; (2) Stern & Eisenberg, P.C.; (3) Specialized Loan Servicing, LLC; (4) Mortgage Electronic Registration Systems, Inc.; and (5) Wells Fargo Bank, N.A. Taggart claims Deutsche Bank does not own the mortgage and the other Defendants violated various procedures and statutes in handling the mortgage and the foreclosure proceeding in state court. The Defendants move to dismiss all claims and the Court grants their Motions in full.

**\*2** As here, Taggart's frivolity has often been aided and abetted by Joshua Thomas, a lawyer who has drawn increasing scrutiny, criticism and sanction from our Court, other district courts and the Third Circuit Court of Appeals. Thomas's conduct in this case earns him further sanctions.

I

On October 1, 2020, Taggart sued Defendants in the Bucks County Court of Common Pleas. (Notice of Removal, ECF 1.) Defendants removed to federal court in November and, after they moved to dismiss, Taggart amended his complaint on January 11, 2021. (ECF 18, 20.)

In 2016, when Taggart was last in federal court trying to avoid making mortgage payments on the Heron Road property, Judge Smith provided a detailed account of the history of the note, mortgage and loan at issue in this case. *See Taggart*, 2016 WL 4076818, at \*1–3. To summarize, Taggart executed a promissory note for $382,500 with Decision One Mortgage on September 15, 2006. *Id.* at \*1; *see* (Am. Compl. ¶ 153). He also executed a mortgage with MERS, acting as nominee for Decision One Mortgage. *Id.*; *see* (Am. Compl. ¶¶ 32, 45, 135, 204). On May 25, 2010 MERS assigned its interest in the mortgage to Deutsche Bank National Trust Company, as Trustee for Morgan Stanley Abs Capital I Inc. Trust 2007-HE 2. *Id.* at \*2; *see* (Am. Compl. ¶ 157). That assignment is central to Taggart's claims. He contends the assignment was invalid because Decision One Mortgage had "ceased to exist" on May 25, 2010.[2] (Am. Compl. ¶ 135.) Because it purportedly no longer existed, it was not a member of MERS and MERS could not assign the mortgage to Deutsche Bank. (*Id.*) Thus, he claims Deutsche Bank lacks the legal capacity to enforce the mortgage. (*Id.*) Deutsche Bank disagrees and sought foreclosure three times in Pennsylvania state court after Taggart defaulted on his mortgage payments. *See* (*id.* at ¶ 163).

Recently, the Bucks County Court of Common Pleas granted Deutsche Bank summary judgment in the latest foreclosure proceeding, entering judgment *in rem* against Taggart for $835,182.13 plus interest at a rate of $81.56 *per diem*.[3] (Deutsche Bank Letter to Court, ECF 33.) After Taggart appealed that judgment, the court issued an opinion

Case 3:26-cv-00879-JES-DFB    Document 11-2    Filed 05/18/26    Page 43 of 62

Taggart v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2021)

explaining that the evidence in the foreclosure action showed MERS assigned the mortgage to Deutsche Bank in 2010 and that, following that assignment, Deutsche Bank became the mortgagee. *Deutsche Bank v. Taggart*, Bucks Cty. CCP, No. 2018-05654, Opinion, Dkt. No. 161.

Taggart's Amended Complaint totals 400 paragraphs and 77 pages. It lodges 29 Counts against Defendants. Stated otherwise, the Amended Complaint is a convoluted, incoherent, jumbled mess. [4] It lacks a clear chronology or logical organization and numerous paragraphs include spelling and grammatical errors. Taggart spends much of the first 152 paragraphs and 35 pages responding to Defendants' now-moot motions to dismiss his original complaint and recounting the state court foreclosure proceeding. In fact, the Amended Complaint borrows entire paragraphs from Taggart's pleadings in the state court foreclosure action. *Compare, e.g.*, (Am. Compl. ¶ 118) *with* (Deutsche Bank Mot. to Dism., Exh. 2 at 21–22, ECF 25-4). Taggart's "Preliminary Alligations [sic]" do not begin until Paragraph 153. From there, the Amended Complaint continues making confusing (and often inapposite) allegations until it begins its litany of Counts against Defendants. Paragraph 197 provides a good example of the pleading's sloppiness and incoherence:

> **\*3** Bucks County is the proper venue to bring this action to quiet title as the properties are located in Montgomery County. Pennsylvania Code, Rule '1062' [sic], requires that an 'Action to Quiet Title' be brought in the county in which the property interests lie. The property subject to the 'Quiet Title' action lies in Montgomery County, Pennsylvania.

(Am. Compl. ¶ 197.) The Amended Complaint contains countless other rambling, conclusory and vague claims. The Court might overlook such silliness from inexperienced *pro se* litigants. It expects far more from counseled pleadings.

Despite the Amended Complaint's shortcomings, its essence is fairly clear. Taggart's claims against Deutsche Bank stem from its foreclosure actions in state court. (Am. Compl. ¶ 2); *see* (*id.* at ¶ 8). His claims against Stern & Eisenberg and MERS arise out of the same foreclosure actions. (*Id.*) He drags Wells Fargo into the mix by claiming Deutsche Bank

used it as a servicer to collect in the foreclosure actions. *See* (*id.* at ¶ 164). In short, Taggart asks the Court to conclude that no Defendant has a valid interest in the Heron Road property and that Defendants violated several laws in trying to enforce the mortgage and collect from him. In Counts 1 through 5, Taggart asserts quiet title claims against each Defendant. Counts 6 through 10 are slander of title claims. Count 11 is a breach of contract claim against Deutsche Bank. In Counts 12 through 14 and 28 and 29, Taggart claims SLS, Deutsche Bank and Stern & Eisenberg failed to comply with foreclosure protections. Count 15 adds an Unfair Trade Practices Act claim against Stern & Eisenberg. Counts 16 through 18 assert various claims under the Fair Debt Collection Practices Act against Deutsche Bank, SLS and Stern & Eisenberg. In Counts 19 to 24, Taggart claims Defendants violated the Fair Credit Extension Uniformity Act and the Pennsylvania Unfair Trade Practices and Consumer Protection Law. Finally, Taggart asserts fraud claims against Deutsche Bank, SLS and Stern & Eisenberg in Counts 25 through 27.

On January 29, 2021, Wells Fargo moved to dismiss all claims against it for failure to state a claim. (ECF 24.) Taggart responded one week after his deadline to do so and Wells Fargo replied five days later. (ECF 26.) Deutsche Bank, SLS, MERS and Stern & Eisenberg moved to dismiss the claims against them on February 4, 2021. (ECF 25.) Nineteen days later, Taggart moved for an extension of time to respond and to exceed the Court's page limitation in his filing. (ECF 27.) The Court denied that motion, (ECF 29), and Taggart responded, again untimely, on February 25. (ECF 31.) [5] Deutsche Bank and the others replied on March 4. (ECF 32.) On March 16, Deutsche Bank, SLS, MERS and Stern & Eisenberg informed the Court that the state court had entered summary judgment against Taggart in the foreclosure proceeding. (ECF 33.) The Court ordered the parties to file letter briefs explaining the impact that ruling had on Taggart's claims in this case. (ECF 34.) Deutsche Bank, SLS, MERS and Stern & Eisenberg argue the state court judgment and collateral estoppel preclude relief on Counts 1 through 3, 5 through 8, 11 through 14 and 25 through 29. (ECF 35.) Wells Fargo contends the state court judgment precludes relief on all claims against it. (ECF 36.) Taggart, invoking another tired tactic, argues the state court judgment has no preclusive effect because it is based on fraud and he could not have brought the claims he raises now in the state court proceeding. (ECF 36.)

 **\*4** After the parties submitted those letter briefs, Taggart moved for injunctive relief and a hearing on his quiet title

claims. (ECF 39.) He insists that if the Court does not act quickly on these claims, he risks losing his home to a foreclosure sale based on the judgment against him in state court. The motion is therefore best characterized as an attempt to appeal the state court foreclosure judgment. In any event, the Court denies the motion because Taggart does not show a likelihood of success on the merits or a genuine risk of irreparable harm.

## II

### A

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead factual allegations sufficient "to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "mere possibility of misconduct" is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court must construe the complaint in the light most favorable to the plaintiff. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (citations omitted). However, a court need not accept as true inferences drawn by the plaintiff that are unsupported by facts. *See Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*, 550 U.S. at 555 (internal citations and alterations omitted); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). A court should "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). Whether a complaint states a plausible claim for relief is a context-specific task that "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citations omitted).

### B

"*Res judicata* provides that 'a federal court must give a state court judgment the same preclusive effect that the state court would give it.' " *Conte v. Mortg. Elec. Reg. Sys.*, No. 14-cv-6788, 2015 WL 1400997, at *4 (E.D. Pa. Mar. 27, 2015) (quoting *Sherk v. Countrywide Home Loans, Inc.*, No. 08-cv-5969, 2009 WL 2412750, at *6 (E.D. Pa. Aug. 5, 2009)). Under Pennsylvania law:

> *Res judicata*, or claim preclusion, is a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action. Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action. [Claim preclusion] applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action.

*Balent v. City of Wilkes–Barre*, 669 A.2d 309, 313 (Pa. 1995) (internal citation omitted). "The Supreme Court of Pennsylvania has held that an order is final for preclusion purposes unless or until it is overturned on appeal." *Regscan, Inc. v. Brewer*, No. 04-cv-6043, 2006 WL 401852, at *6 (E.D. Pa. Feb. 17, 2006) (citing *Shaffer v. Smith*, 673 A.2d 872, 874–75 (Pa. 1996)), *aff'd*, 289 F. App'x 488 (3d Cir. 2008). "A claim challenging a party's conduct that occurred prior to the state court entering judgment in a foreclosure proceeding ... is subject to the principles of preclusion under res judicata." *Conte*, 2015 WL 1400997, at *4.

## III

### A

**\*5** Without seeking permission to do so, Taggart responded to Wells Fargo's motion to dismiss a full week beyond the deadline. (ECF 26.) Then, five days after his response to

Case 3:26-cv-00879-JES-DFB   Document 11-2   Filed 05/18/26   Page 45 of 62

Taggart v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2021)

the Deutsche Bank Defendants was due, he moved for an extension of time. (ECF 27.) The Court denied the extension and Taggart responded to the motion two days later, again a full week after the deadline. (ECF 29, 31.) Taggart and Thomas have made a habit of ignoring court deadlines and filing untimely pleadings in this Court. *See, e.g.*, *Taggart v. Norwest Mortgage, Inc., et al.*, No. 09-1281 (Taggart, proceeding *pro se*, requesting numerous extensions of time); *Jacovetti Law, P.C. v. Shelton*, No. 20-cv-163, 2020 WL 1491320 (E.D. Pa. Mar. 27, 2020) (noting that, in several cases, Thomas "has disregarded the rules and deadlines that ensure cases move in an orderly way"). The Court could have taken up Defendants' Motions before Taggart filed his untimely responses. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); LOCAL RULE OF CIV. P. 7.1(c). Nevertheless, it will consider his responses, such that they are, in deciding the Motions now.

### B

*Res judicata* bars relief on several of Taggart's claims. As an initial matter, although Taggart's appeal of the state court's summary judgment is pending, the judgment is final for purposes of *res judicata*. *Regscan, Inc.*, 2006 WL 401852, at *6; *Schuldiner v. Kmart Corp.*, 450 F. Supp. 2d 605, 609 (E.D. Pa. 2006), *aff'd*, 284 F. App'x 918 (3d Cir. 2008) ("Furthermore, Pennsylvania law does not require that courts await appellate review in an initial action before res judicata or collateral estoppel may apply to a second action."). This final judgment precludes relief on several claims.

First, *res judicata* bars Taggart's quiet title and slander of title claims against Deutsche Bank. The alleged cloud on his property and Deutsche Bank's purported slander occurred prior to, and during, the state court foreclosure proceeding. Accordingly, "[t]he time and place to [raise these issues] was in the state court proceedings." *Conte v. Mortg. Electr. Reg. Sys.*, No. 14-cv-6788, 2015 WL 1400997, at *5 (E.D. Pa. Mar. 27, 2015). And, despite his arguments to the contrary, Taggart effectively raised at least a quiet title claim in the state court. *See* (Deutsche Bank Mot. to Dism., Exh. 2 at 4–6, 22–27) (Taggart argued the state court lacked jurisdiction because Deutsche Bank could not prove it held an enforceable mortgage or valid chain of title). By granting Deutsche Bank summary judgment, the state court necessarily rejected that claim. *Commonwealth v. Holder*, 805 A.2d 499, 502 (Pa. 2002); *see Laychock v. Wells Fargo Home Mortg.*, No. 07-cv-4478, 2008 WL 2890962, at *3 (E.D. Pa. July 23, 2008)

("A mortgage foreclosure also depends upon the existence of a valid mortgage."); *Williford v. LSF8 Master Participation Trust*, 2018 WL 451644, at *3 (E.D. Pa. Jan. 17, 2018) ("[A] foreclosure judgment necessarily includes a finding that the mortgage was valid, and that the mortgage holder who is the plaintiff in a foreclosure action has standing to foreclose."); *Lewis v. Citibank, N.A.*, 179 F. Supp. 3d 458, 462 (E.D. Pa. 2016) (quiet title and slander of title claims were "inextricably intertwined" with the state court's foreclosure judgment). Taggart asks the Court in Counts 1 and 6 to declare that Deutsche Bank "has no valid and enforceable mortgage." (Am. Compl. ¶¶ 215(a)–(f), 242(g)–(l).) But to do that, the Court would have to ignore the state court's foreclosure judgment. Because the Court must give "a state court judgment the same preclusive effect that the state court would give it," these claims are dismissed with prejudice. *Conte*, 2015 WL 1400997, at *4–5.

Second, *res judicata* precludes relief on Taggart's breach of contract, fraud and failure to comply with mortgage protections claims against Deutsche Bank. Taggart bases the breach of contract claim on his position that Deutsche Bank violated numerous terms of the note and mortgage. (Am. Compl. ¶ 280(a)–(n).) He supports his fraud claim with allegations that Deutsche Bank filed false pleadings and perpetrated a fraud on the state court. (*Id.* at ¶¶ 388–89.) Finally, Taggart claims Deutsche Bank failed to comply with mortgage protections by ignoring his purported loss mitigation application. (*Id.* at ¶¶ 288–90.) Taggart could have, or did, raise these issues in the state court foreclosure proceeding. [6] *See* (Deutsche Bank Mot. to Dism., Exh. 2 at 17–26). Like his quiet title and slander of title claims, the state court necessarily rejected these claims in entering summary judgment for Deutsche Bank. *See Holder*, 805 A.2d at 502; *Deutsche Bank v. Taggart*, Bucks Cty. CCP, No. 2018-05654, Opinion, Dkt. No. 161 (noting Taggart contested the foreclosure based on "improper notice, invalid assignment of the mortgage, and lack of payment records"). These claims are also dismissed. *See Conte*, 2015 WL 1400997, at *5.

### C

**\*6** *Res judicata* aside, Taggart does not state plausible quiet title claims against any Defendant. Rule 1061(b)(3) of the Pennsylvania Rules of Civil Procedure allows for an action to quiet title to "compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document, obligation or deed

Case 3:26-cv-00879-JES-DFB    Document 11-2    Filed 05/18/26    Page 46 of 62

Taggart v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2021)

affecting any right, lien, title or interest in land." *US Bank Nat. Ass'n v. McClain*, No. 3062 EDA 2014, 2015 WL 6143916, at *7 (Pa. Super. Oct. 16, 2015). "The purpose of a quiet title action under this statute is to remove clouds on title and resolve conflict over interests in property." *Taggart*, 2016 WL 4076818, at *5 (citing *White v. Young*, 186 A.2d 919, 921 (Pa. 1963)).

Through his quiet title claims, Taggart requests that Defendants proffer evidence related to their alleged claim of title on his property. *See* (Am. Compl. ¶¶ 213, 220, 223, 233). Those requests are improper because, as this Court explained in addressing Taggart's most recent attempt to avoid paying this mortgage, the quiet title statute "is not a license to force any person somewhat associated with a property transaction to answer a series of requests for admissions and produce documents." *Taggart*, 2016 WL 4076818, at *4. [7] Taggart also fails to clearly plead facts establishing that any Defendant, other than Deutsche Bank, claims any interest in his property whatsoever. [8] The state court entered summary judgment in favor of Deutsche Bank in the foreclosure proceeding and the non-Deutsche Bank Defendants expressly deny any interest in the property. Thus, there is no cloud on Taggart's title and his quiet title claims are all dismissed.

### D

Taggart's slander of title claims against each Defendant fare no better. Slander of title is the "false and malicious representation of the title or quality of another's interest in goods or property." *Narducci v. Regis Dev. Corp.*, 2005 WL 1620379, at *1 (Pa. Com. Pl. July 7, 2005) (*quoting Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243 (2002)). Nowhere in his confused and conclusory Amended Complaint does Taggart specify any allegedly false and malicious representations about his property. [9] And to the extent Taggart bases his claims on representations Defendants made in the state court, the absolute privilege for statements made in the course of litigation protects them. *See Triester v. 191 Tenants' Ass'n*, 415 A.2d 698, 702 (Pa. Super. Ct. 1979).

 **\*7** Taggart's failure to state a claim for slander of title is made worse by the fact that he and Thomas know better. Several times in the last few years, courts in this Circuit have concluded that Taggart—represented by Thomas—failed to state facts supporting a slander of title claim. *See, e.g.*, *Taggart*, 2016 WL 4076818, at *5; *Taggart v. Wells Fargo*

*Bank, N.A.*, 723 F. App'x 127, 129 (3d Cir. 2018). Because it is clear Taggart cannot support these claims, they are dismissed with prejudice.

### E

Taggart next claims Deutsche Bank breached its contract by failing to provide necessary documents and follow proper procedures in accelerating the amount owed on his note and mortgage and by seeking foreclosure. (Am. Compl. ¶ 280(a)–(n).) Deutsche Bank moves to dismiss because Taggart bases this claim on events that occurred in 2010 and the statute of limitations for a breach of contract claim in Pennsylvania is four years. *See* (Deutsche Bank Mot. to Dism. 15) (citing 42 Pa.C.S. § 5525(a)(1)). Taggart, without explanation or legal support, disputes this position and argues only that if the statute of limitations bars his breach of contract claim, then that same statute of limitations bars Deutsche Bank's foreclosure action. (Taggart Resp. to Deutsche Bank 24, ECF 31.) Not so. First, even if Taggart's musing about the applicability of this statute of limitations to Deutsche Bank's foreclosure action were correct (it is not), the Court lacks jurisdiction to interfere with a state court action in the way Taggart suggests it should. Second, and more important, Deutsche Bank is correct—Pennsylvania's four-year statute of limitations bars Taggart's breach of contract claim based on alleged conduct from 2010. *See* 42 Pa.C.S. § 5525(a)(1). To the extent Taggart supports this claim with allegations that occurred within the statute of limitations, *res judicata* bars the claim as explained in Section III.B. This claim is also dismissed with prejudice.

### F

Taggart's claims that Deutsche Bank, SLS and Stern & Eisenberg failed to comply with mortgage protections also fail. He contends these Defendants failed to take appropriate action in response to his loss mitigation application. Such an application typically triggers certain obligations for a loan servicer to ensure it provides a mortgagor loss mitigation opportunities. In October of 2020, Taggart submitted what could be construed as a proposed settlement loan modification offer. *See* (Am. Compl. Exh. V). SLS acknowledged receipt of that document and provided Taggart a Request for Mortgage Assistance application and a letter explaining he must return the completed form by December 3, 2020. (Deutsche Bank Mot. to Dism, Exh. 4.) Returning that application would have

Case 3:26-cv-00879-JES-DFB   Document 11-2   Filed 05/18/26   Page 47 of 62

Taggart v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2021)

triggered the protections Taggart claims Defendants denied him. *See* 12 C.F.R. § 1024.41(c)(1). Taggart did not return the application despite SLS's follow-up efforts urging him to contact SLS to discuss loss mitigation. (Deutsche Bank Mot. to Dism, Exh. 5.) Taggart's claims ignore this fact. He alleges Deutsche Bank, via SLS, "has not even provided an application [ ] for consideration." (Am. Compl. ¶ 11.) The documents attached to Deutsche Bank's Motion contradict that claim. [10] Accordingly, the Court dismisses Taggart's foreclosure protection claims against Deutsche Bank and SLS with prejudice.

**\*8** Taggart's identical claim against Stern & Eisenberg fails for the same reasons and because, as counsel for Deutsche Bank, it is immune from suit. *See Smith v. Griffiths*, 476 A.2d 22, 26 (Pa. Super. Ct. 1984) ("Where an attorney represents a client in litigation or during arms length negotiations, the public interest demands that attorneys, in the proper exercise of their functions as such, not be liable to adverse parties for acts performed in good faith and for the honest purpose of protecting the interests of their clients."). Taggart fails to state a plausible claim that Stern & Eisenberg acted with anything but good faith in litigating the foreclosure action. Indeed, it would be impossible to do so now that the state court entered judgment for Deutsche Bank in that proceeding, vindicating Stern & Eisenberg's representation.

Taggart's mortgage protection claims against Deutsche Bank and Stern & Eisenberg also fail because 12 C.F.R. § 1024.2 applies only to a loan servicer, or "a person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan)." 12 C.F.R. § 1024.2. "Servicing means receiving any scheduled periodic payments from a borrower pursuant to the terms of any federally related mortgage loan ... and making the payments to the owner of the loan or other third parties of principal and interest and such other payments with respect to the amounts received from the borrower as may be required." *Id.* Taggart does not allege that Deutsche Bank and Stern & Eisenberg are loan servicers, so he cannot maintain Counts 13 through 15 [11] against them. [12]

G

In Counts 16, 17, 18, 19, 21 and 23 Taggart claims Deutsche Bank, SLS and Stern & Eisenberg violated the FDCPA. He contends Deutsche Bank and SLS violated the Act by failing to properly respond to his June 26, 2018 request to verify his debt. (Am. Compl. ¶ 301, 307.) He also alleges SLS violated the Act by contacting him when it knew he was represented by counsel and by contacting him at prohibited times. (*Id.* at ¶¶ 168, 180, 181, 310–12.) Stern & Eisenberg allegedly violated the Act by not responding to his May 6, 2020 debt verification request. (*Id.* at ¶¶ 317, 318, Exh. N); *see* (Deutsche Bank Mot. to Dism., Exh. 6).

"The FDCPA prohibits debt collectors from making false, deceptive, or misleading representations to collect a debt." *Walker v. Phelan Hallinan Diamond & Jones*, 269 F. Supp. 3d 618, 621 (E.D. Pa. 2017) (citing 15 U.S.C. § 1692(e)). "A claim under the FDCPA 'may be brought ... within one year from the date on which the violation occurs.' " *Glover v. F.D.I.C.*, 698 F.3d 139, 148 (3d Cir. 2012) (quoting 15 U.S.C. § 1692k(d)). The statute of limitations bars Taggart's claims against Deutsche Bank and SLS regarding his debt verification requests in June of 2018 because he waited until October 1, 2020 to file this suit in the Bucks County Court of Common Pleas. (Am. Compl. ¶¶ 301, 307.) And to the extent Taggart bases his FDCPA claims on the state court foreclosure action, the statute of limitations bars those claims as well. Deutsche Bank initiated that case on October 1, 2018. "When a FDCPA claim is based on a defendant's allegedly improper pursuit of litigation to collect a debt, the FDCPA's one-year statute of limitations accrues at the latest when the plaintiff is served with process." *Walker*, 269 F. Supp. 3d at 621. Since Taggart was served in the state court action before October 1, 2019, the one-year statute of limitations bars any FDCPA claim based on that case. *See Deutsche Bank v. Taggart*, Bucks Cty. CCP, No. 2018-05654, Proof of Service, Dkt. No. 2.

**\*9** Taggart's FDCPA claim against Stern & Eisenberg also fails. Taggart alleges Stern & Eisenberg failed to verify his debt in response to his May 6, 2020 request. (Am. Compl. ¶¶ 150, 317–21, Exh. L.) Unsurprisingly, that claim is verifiably false. Stern & Eisenberg responded in detail on June 5, 2020. (Deutsche Bank Mot. to Dism., Exh. 6.) To the extent Taggart acknowledges this response but believes it was nonresponsive, he fails to plead facts explaining the June 5 letter's deficiencies. *See* (April 22 Hr'g Tr. 94:8–9, ECF 50). Accordingly, this claim is dismissed with prejudice.

Taggart attempts to raise several other FDCPA claims against SLS. He claims SLS violated the FDCPA by repeatedly calling him in relation to his mortgage debt—when it knew he was represented by counsel—in violation of 15 U.S.C. § 1692c(a)(2). He also contends that SLS called him at specific times after he notified it not to call at those times.

Case 3:26-cv-00879-JES-DFB    Document 11-2    Filed 05/18/26    Page 48 of 62

Taggart v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2021)

To state a claim for relief under the FDCPA, Taggart must plausibly allege that (1) he is a consumer, (2) SLS is a debt collector, (3) SLS attempted to collect a debt, and (4) SLS violated the FDCPA in its attempt to collect the debt. *See Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 427 (3d Cir. 2018). Each of Taggart's FDCPA claims fail because he does not plausibly allege that SLS is a debt collector. "The FDCPA provides two alternative definitions of a debt collector: (1) any person 'who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts' (the 'principal purpose' definition), or (2) any person 'who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another' (the 'regularly collects' definition)." *Stone v. JPMorgan Chase Bank, N.A.*, 415 F. Supp. 3d 628, 632 (E.D. Pa. 2019). Taggart baldly asserts SLS "regularly engages in the collection of debt and is a 'Debt Collector' as defined under 1692(a) of the FDCPA." (Am. Compl. ¶ 171.) That bare accusation is insufficient to establish that SLS is a debt collector under the FDCPA. *See Estate of Egenious Coles v. Zucker, Goldberg & Ackerman*, 658 F. App'x 108, 111 (3d Cir. 2016) (affirming dismissal of FDCPA claim where plaintiff alleged defendant was debt collector "by quoting the relevant definition from the FDCPA"); *Machles v. McCabe, Weisberg & Conway, P.C.*, No. 17-1015, 2017 WL 5172516, at *3 (E.D. Pa. Nov. 7, 2017) (same).

Taggart's § 1692c(a)(2) claim fails for an additional reason. Section 1692c(a)(2) provides, "a debt collector may not communicate with a consumer in connection with the collection of any debt ... if the debt collector knows the consumer is represented by an attorney with respect to such debt." 15 U.S.C. § 1692c(a)(2). A "communication" is "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). To obtain relief under § 1692c(a)(2), "a communication needs to be in connection with the collection of a debt." *Vilinsky v. Phelan Hallinan & Diamond, PC*, 640 F. App'x 139, 141 (3d Cir. 2016). Taggart conclusorily states SLS contacted him "in an attempt to collect the alleged debt" and attaches a call log to his Amended Complaint showing SLS called him. (Am. Compl. ¶ 180); (*Id.*, Exh. P.) Without more, the Court cannot conclude "that this can be classified as collection activity." *Vilinsky*, 640 F. App'x at 142. The Court dismisses this claim as well.

## H

Next, Taggart alleges Defendants violated the Fair Credit Extension Uniformity Act ("FCEUA") and the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). "The enforcement provision at Section 2270.5 of the FCEUA provides '[i]f a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of the [UTPCPL].' " *Kern v. Lehigh Valley Hosp., Inc.*, 108 A.3d 1281, 1290 (Pa. Super. Ct. 2015) (quoting 73 P.S. § 2270.5). Because of this relationship between FCEUA and UTPCPL claims, a plaintiff alleging violations of these Acts "must plead an ascertainable loss resulting from justifiable reliance on the defendant's conduct in order to survive a Rule 12(b)(6) motion." *Hall v. Equifax Info. Servs. LLC*, 204 F. Supp. 3d 807, 811 (E.D. Pa. 2016) (citing *Kern*, 108 A.3d 1281). Justifiable reliance occurs when a defendant's conduct induces a plaintiff to act "or engage in any other detrimental activity." *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 227 (3d Cir. 2008). To allege ascertainable loss, a plaintiff must "plead facts ... point[ing] to money or property that he would have had but for the defendant's [deceptive] actions." *Hall*, 204 F. Supp. 3d at 811 (citation and quotation marks omitted) (alteration in original).

**\*10** Taggart does not plead justifiable reliance or ascertainable loss. At oral argument, Taggart contended that he "rel[ied] on the Defense to respond to a settlement offer that they made and that we responded to." (April 22 Hr'g Tr. 95:2–3.) But this alleged reliance comes up short because Taggart "has not alleged that [Defendants'] deception induced him to [act] or engage in any other detrimental activity." *Hunt*, 538 F.3d at 227. In other words, the Court is left "guessing as to how his knowledge that" Defendants would not respond to his settlement inquiries "would have changed his conduct." *Id.* And his passing reference to having "suffered an ascertainable loss as a result of Defendant's actions" is conclusory and cannot support his claims. (Am. Compl. ¶¶ 339, 357, 375.) At oral argument, he claimed his loss included "damaged credit" and "damaged title." (April 22 Hr'g Tr. 96:3–4.) But, even assuming those injuries would constitute ascertainable loss, Taggart does not plead them in the Amended Complaint. These claims are dismissed.

## I

Case 3:26-cv-00879-JES-DFB    Document 11-2    Filed 05/18/26    Page 49 of 62

Taggart v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2021)

Finally, in Counts 25 through 27 Taggart employs another of his shopworn tactics for challenging the conduct of anyone who dare try to make him pay his mortgage. He claims Deutsche Bank, SLS and Stern & Eisenberg committed fraud by filing false pleadings in the state court foreclosure proceeding. *See* (Am. Compl. at ¶¶ 380–81, 384–85, 388–89); *see also Taggart v. Saltz*, No. 20-cv-1638, 2020 WL 5943728 (E.D. Pa. Oct. 7, 2020) (claiming Wells Fargo and its attorneys committed fraud on the court in related state court proceedings). Although he does not specify in each Count the conduct he believes was fraudulent, the Court assumes that Taggart intends to support these claims with his scattershot allegations throughout the Amended Complaint. *See* (Deutsche Bank Mot. to Dism. 21–22) (citing numerous provisions in Amended Complaint arguably supporting fraud claims). The Third Circuit "employ[s] a demanding standard for independent actions alleging fraud upon the court requiring: (1) an intentional fraud; (2) by an officer of the court; (3) which is directed at the court itself; and (4) that in fact deceives the court." *Herring v. United States*, 424 F.3d 384, 390 (3d Cir. 2005). The fraud must be "egregious misconduct ... such as bribery of a judge or jury or fabrication of evidence by counsel." *Id.* (citation omitted). [13]

Taggart comes nowhere near this demanding standard. Each of his allegations are, at best, arguments why Deutsche Bank should have lost in state court. For example, he claims: Deutsche Bank failed to properly provide pre-foreclosure notices (Am. Compl. ¶ 94); Deutsche Bank's complaint did not contain an itemized statement of the amount due (*id.* at ¶ 87); improper joinder (*id.* at ¶ 90); and several other reasons why he thinks he should have won in the foreclosure action. Taggart's allegations are conclusory and do not rise to the level necessary to allege a fraud on the court.

### IV

Taggart seeks leave to amend his Amended Complaint. "[A] district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004). The Court will not grant leave to amend because Taggart and Thomas have shown bad faith and a dilatory motive throughout this case, amendment would be inequitable and, for most of the Counts in the Amended Complaint, futile. Taggart has already amended once and

this is his third case in our Court involving the Heron Road property. He has repeatedly failed to state plausible claims for relief—despite our Court's and the Third Circuit's guidance—and the convoluted, scattershot nature of his Amended Complaint gives the Court no confidence that a Second Amended Complaint would be any better. Not to mention, this case is just the latest avenue for Taggart to dodge his mortgage payments. For years, Taggart has attempted to avoid those payments through litigation. Finally, Deutsche Bank secured judgment in the state court requiring him to pay. If, at this point, subjecting the Defendants to another go-round with Kenneth Taggart and Joshua Thomas isn't inequitable, nothing is.

### V

**\*11** Taggart has flooded our Court's docket with baseless lawsuits for over a decade. In Joshua Thomas he has found a lawyer who enables his worst instincts and tendencies. This Court, others in the Circuit, and the Third Circuit Court of Appeals itself, have reprimanded and sanctioned Thomas in recent years. Just last year, Judge Wolson detailed the five instances when Thomas faced sanctions in the District of New Jersey and the one prior sanction Thomas received from our Court before he also sanctioned Thomas. *Jacovetti Law, P.C.*, 2020 WL 1491320, at \*3–7. And earlier this year, Judge Hardiman, writing precedentially for the Third Circuit, sanctioned Thomas under Rule 38 of the Federal Rules of Appellate Procedure for a "copy-and-paste appeal" in which he "recycle[ed] meritless arguments without engaging the District Court's analysis." *Conboy v. United States Small Bus. Admin.*, 992 F.3d 153, 158 (3d Cir. 2021). Somehow none of these recent sanctions have gotten through to Thomas. [14]

### A

On April 28, the Court ordered Thomas to show cause why the Court should not sanction him under Rule 11 and its inherent authority. (ECF 52.) Among other things, the Court ordered Thomas to explain why several significant pleading deficiencies, his practice of ignoring Court deadlines, his apparent lack of discretion and diligence in filing pleadings and his false statements to the Court about the suspension of his bar license do not warrant sanctions. (*Id.*) Thomas responded on May 7, addressing each point in the Court's Order. (ECF 54.) The Court then held a Show Cause Hearing on May 26. (ECF 58.)

B

Rule 11 imposes an affirmative duty on an attorney to conduct a reasonable inquiry into the factual and legal bases of all claims before filing any document with the court. *Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991); *see also Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3d Cir. 1994). The Rule provides in relevant part:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

FED. R. CIV. P. 11(b)(1)–(3). A court may, *sua sponte*, order an attorney to show cause why certain conduct does not violate Rule 11. FED. R. CIV. P. 11(c)(3).

"Among the implied and incidental powers of a federal court is the power to discipline attorneys who appear before it." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 278 F.3d 175, 189 (3d Cir. 2002) (citations and quotation marks omitted). The Court may exercise its authority to impose sanctions when it determines that, in the course of litigation, an attorney "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 189 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). "Generally, a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists." *Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995).

C

**\*12** In sanctioning Thomas last year, Judge Wolson found that he lied to the Court under oath. *Jacovetti Law, P.C.*, 2020 WL 1491320, at \*1, 3. In another case last year, Judge Frank ordered Thomas to show cause why he should not be held in contempt for filing schedules in a bankruptcy proceeding that were identical to schedules he had filed in an earlier bankruptcy. *In re Thomas*, 612 B.R. 46, 49 (Bankr. E.D. Pa. 2020). Thomas blamed the identical schedules on an oversight, but Judge Frank did not believe him and concluded that Thomas acted intentionally. Judge Frank said Thomas's conduct "must be characterized as a conscious disregard of his most basic duties as an attorney" and "evidence[d] a distinct lack of concern for the integrity of the bankruptcy system." *Id.* at 67–68.

Here, Joshua Thomas lied, repeatedly, to the Court at oral argument on Defendants' Motions to Dismiss. The proceeding had an inauspicious beginning—and went downhill from there. Defense counsel stated he learned that Thomas's Pennsylvania bar license was administratively suspended on April 16, 2021, six days before the argument. Thomas never told his client, opposing counsel or the Court of this suspension, despite a clear directive from the Disciplinary Board of the Supreme Court of Pennsylvania to do so. When confronted about it, Thomas explained that he was notified in a March 17 letter that he would be administratively suspended on April 16 if he did not complete annual CLE requirements. (April 22 Hr'g Tr. 6:20–24.) He assured the Court that he had resolved the issue by completing and submitting the required CLE documents earlier that week. (*Id.* at 6:12–16) ("As of today, the CLEs were—or I should say as of the beginning of the week, the CLEs were complete and I was told that that would mean that I can continue to practice...."); (*id.* at 7:5–8) ("There's a notice saying that if you don't finish your CLEs by this time, we're going to actually put the order into effect. The CLEs were completed, and as of this time, they should no longer apply."); (*id.* at 8:19–24) ("The order said that this would not actually be released if all the CLEs were completed within I believe it might have been a 30-day period or whenever the date was. I don't have it in front of me. The CLEs were submitted."); (*id.* at 13:2–5) ("Again, it's a CLE issue, your Honor, and it shouldn't actually have gone into effect. Again, it was from March 17th. The CLEs were submitted. I don't know why they weren't applied.").

Case 3:26-cv-00879-JES-DFB    Document 11-2    Filed 05/18/26    Page 51 of 62

Taggart v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2021)

Based on these representations, the Court allowed Thomas to represent Taggart at oral argument, requiring him to subsequently provide proof that he had cured the issue with his bar license. (*Id.* at 13:6–14:6) (assuring the Court that he would provide proof that he had submitted the CLE documents); (*id.* at 15:14–16). Thomas never provided that proof and the Court now understands why—there wasn't any. And there wasn't any because Thomas had not done what he told the Court he had. [15]

After Thomas submitted his Response to the Order to Show Cause, the Court contacted the Office of Disciplinary Counsel to inquire into the status and circumstances of Thomas's administrative suspension. That Office informed the Court it had no knowledge of Thomas submitting any required documentation before the oral argument. In fact, Thomas satisfied his requirements on April 27, five days *after* the argument. The Pennsylvania CLE Board then certified his compliance with the Attorney Registrar. The Attorney Registrar emailed Thomas the requirements for reinstatement and provided the necessary forms. On May 3, Thomas paid the $300 reinstatement fee to the Attorney Registrar and provided a Statement of Compliance, thereby restoring his license to active status. Thomas did not explain any of this in his Response to the Order to Show Cause. Instead, he qualified his Response on this point, saying, "I made sure to try and be as candid with the matter as possible with the court." (Resp. to Order to Show Cause 22.) And he told the Court that his license is no longer administratively suspended. (*Id.*) But he did not explain that he had not submitted anything until April 27 or that he had not fully cured the defect until May 3.

 **\*13**  At the Show Cause Hearing, the Court pressed Thomas on this issue. He explained that "[t]he CLEs had been completed" on April 22, but that he had not submitted them. (Show Cause Hr'g Tr. 63:11–14.) Thomas blamed his failure to cure his suspension on a misunderstanding regarding his obligation to submit the CLEs after he completed them. (*Id.*) But at the oral argument on the Motions to Dismiss, Thomas told the Court several times that he had *submitted* his CLEs, not merely completed them. (April 22 Hr'g Tr. 8:8–10, 8:19–24, 9:17–18, 13:2–5.) When asked whether he understood that his statements, made under oath at the Show Cause Hearing, "directly contradict[ ]" what he said at the April 22 oral argument, Thomas said "[y]es." (Show Cause Hr'g Tr. 63:15–18.)

Pennsylvania Rule of Professional Conduct 3.3 imposes on attorneys a duty of candor to courts. But "[a]n attorney's duty of candor to the Court is not limited to Rule 3.3. Rather, '[e]ven beyond the requirements of Rule 3.3[ ], an attorney, as an officer of the Court, has an overarching duty of candor to the Court.' " *In re Grasso*, 586 B.R. 110, 162 (Bankr. E.D. Pa. 2018) (quoting *Eagan by Keith v. Jackson*, 855 F. Supp. 765, 790 (E.D. Pa. 1994)). Thomas violated his duty of candor at the April 22 hearing when he claimed he had submitted the required CLEs and cured the defects causing his administrative suspension.

D

The Court also ordered Thomas to show cause why it should not sanction him for repeatedly missing Court deadlines. Thomas's conduct in this case and others suggests that he views Court deadlines as optional or that he is incapable of understanding and following even the most basic rules governing the practice of law in the federal courts. Ten days after Defendants moved to dismiss the Complaint, Thomas asked for an extension to respond, citing the Christmas holiday and, ironically, Defendants' "voluminous filings." (ECF 13.) He noted that the Court had extended the deadline for Defendants to respond to the Complaint. (*Id.*) Curiously, he referenced January 11 as the due date for his responses. But because Defendants moved to dismiss on December 21, Taggart's responses were due January 4. [16] *See* LOCAL RULE OF CIV. P. 7.1(c) (responses to motions due within 14 days). The Court denied the motion because Thomas had not promptly shown a compelling reason for the extension in accordance with the Court's policies and procedures and because he had not conferred with defense counsel regarding the extension. (ECF 14.) On January 6, two days after his deadline to respond, Thomas renewed his motion for an extension to respond or to file an amended complaint. (ECF 15.) He included 38 rambling paragraphs referencing purported settlement negotiations and claims against Defendants. (*Id.*) Because Thomas filed this motion after his deadline to respond and failed to cure the prior motion's defects, the Court denied this one as well. (ECF 16.) On January 11, Thomas filed an Amended Complaint. (ECF 17, 18, 20.)

As explained in Section I, Wells Fargo moved to dismiss the Amended Complaint on January 29. (ECF 24.) Thomas responded one week after the deadline. (ECF 26.) Deutsche Bank, SLS, MERS and Stern & Eisenberg moved to dismiss

Case 3:26-cv-00879-JES-DFB    Document 11-2    Filed 05/18/26    Page 52 of 62

Taggart v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2021)

on February 4. (ECF 25.) Nineteen days later, Thomas moved for an extension of time to respond and to exceed the Court's page limitation in his filing. (ECF 27.) Specifically, he asked for an 11-day extension until March 8. (*Id.*) But his deadline to respond was February 18, so an 11-day extension would have extended the deadline only until March 1. The Court denied the motion, (ECF 29), and Thomas responded on February 25, one week after the deadline. (ECF 31.)

**\*14**  The Court asked Thomas about these missed deadlines at oral argument. He attributed his untimely filings to "calendaring error[s]." (April 22 Hr'g Tr. 108:2–5, 109:3–5.) In his Response to the Order to Show Cause, Thomas reiterates this position and says he fixed the issue. (Resp. to Order to Show Cause 21.) At the Show Cause Hearing, Thomas explained that he mistakenly set 21-day deadlines for responding to motions in federal court. (Show Cause Hr'g Tr. 43:17–21.) He acknowledged that his practice of missing deadlines is "clearly a problem," (*id.* at 46:17), and he said, "it just seems to be an issue where I don't handle the deadlines properly," (*id.* at 49:1–2.)

Given Thomas's history and pattern of missing deadlines, his explanation that he mistakenly set 21-day deadlines to respond to the Motions in this case comes up short. When Judge Wolson sanctioned Thomas last year, he cited Thomas's practice of disregarding deadlines in that case and others. *Jacovetti Law, P.C.*, 2020 WL 1491320, at \*1–2, 5–7. Thomas's failure to grasp the importance of complying with Court deadlines after his experience with Judge Wolson and other courts is unacceptable, especially for an attorney who frequently practices before our Court. And his "calendaring error" reveals an unfamiliarity with one of this Court's most basic rules. LOCAL RULE OF CIV. P. 7.1(c). Ignorance of this rule is inexcusable and knowingly and repeatedly disregarding it is worse. Thomas acted in bad faith by missing nearly every deadline in this case.

E

Normally an attorney's spelling and grammatical mistakes and a pleading's general lack of cogency would not be grounds for sanction. After all, attorneys (and judges) make mistakes now and again. But Thomas's errors go beyond excusable neglect or mistake. The Amended Complaint contains countless typographical and spelling errors and highlights Thomas's inability to consistently put together a coherent sentence. It also lacks any semblance of logical

organization or clarity. These errors doubtless resulted in Defendants spending more time and resources than normal crafting their Motions to Dismiss. They certainly caused the Court headaches as it tried to decipher Taggart's claims. The volume and severity of Thomas's errors in the Amended Complaint demonstrate a complete lack of diligence and a failure to proofread or consider the foundations of his factual and legal assertions.

One great example comes from Paragraph 31 of the Amended Complaint:

> Defendant's, Deutsche Bank, Specialized Loan Servicing LLC, and Stern & Eisenberg, Fraudulent filings with the court, fraud –on-the court, and fraud committed against Taggart for their proffering knowingly false affidavits, pleadings in court, filing of fraudulent documents, and proffering fraudulent documents to Taggart.

(Am. Compl. ¶ 31.) The Amended Complaint also includes many rambling, seemingly out-of-place allegations. Take Paragraph 105:

> Taggart's rescission claims are notwithstanding any and all other claims made by Taggart in this complaint that Deutsche Bank lacks 'Standing' to file claims based on the lack of ownership, chain of title and provenance of the mortgage and note evincing ownership, the failure to meet conditions precedent by providing pre-foreclosure notices of 'Notice of Intent to Foreclose', 'Notice of Intent to Accelerate', pursuant to the mortgage and note and Act 91', as well as any and all other claims as made in this complaint and defenses raised, and new matter as pled in the 3rd Foreclosure Complaint.,

Case 3:26-cv-00879-JES-DFB    Document 11-2    Filed 05/18/26    Page 53 of 62

Taggart v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2021)

(Am. Compl. ¶ 105) (errors in original). The Court asked Thomas at oral argument whether he intended to advance a rescission claim. He answered in the affirmative, but none of the Counts in the Amended Complaint discuss or raise any claims related to rescission.

**\*15** Thomas also consistently mislabels the parties throughout much of the Amended Complaint and recycles, without bothering to edit them, paragraphs from his filings in the state court foreclosure case. [17] By the Court's count, he refers to his client as "Defendant" or to a Defendant as "Plaintiff" in 20 paragraphs and a footnote. (Am. Compl. ¶¶ 15–17, 29, 79, 104, 107, 114, 115, 117, 118, 122, 130, 132–34, 138, 140, 142, 146, fn. 3.) And, as discussed in Section I, he argues that Bucks County is the proper venue and state court the proper forum for some of his claims. (*Id.* at ¶¶ 197, 208.) These are not minor oversights. They evince a pervasive lack of diligence and attention to detail in Thomas's pleadings that harms his client, his opponents and the Court.

In his Response to the Order to Show Cause, Thomas blames his sloppy pleadings on being a sole practitioner, an old saw which should offend sole practitioners everywhere. And Thomas's assurance that he "will make sure *when possible to attempt* to proofread ... in a much better fashion" says it all and shows he still doesn't get how far below professional standards his Amended Complaint falls. (Resp. to Order to Show Cause 22) (emphasis added). Thomas walked back this half-hearted assurance at the Show Cause Hearing, (Show Cause Hr'g Tr. 58:16–23), but his explanation for the Amended Complaint's many errors did little to ease the Court's concerns.

F

The Court also ordered Thomas to show cause why his Motion for Injunctive Relief on his quiet title claims is not sanctionable. The Motion mostly rehashes arguments in the Amended Complaint and Taggart's Responses to Defendants' Motions to Dismiss. In that way, it is effectively a sur-reply to the Motions. The final three pages address the balancing test the Court must employ to determine whether a preliminary injunction is warranted. Thomas says Taggart is likely to succeed on the merits of his quiet title claims because prior assignments of the note and mortgage are invalid and Deutsche Bank cannot show it owns the note and mortgage. *See* (Mot. for Inj. Rel. 10–13). And he says Taggart will suffer

irreparable harm if the Court does not grant the Motion and enjoin a foreclosure sale. (*Id.* at 14.) In his Response to the Order to Show Cause, Thomas reiterates his position that Deutsche Bank lacks a valid claim to the mortgage and that the assignments of the mortgage were invalid. (Resp. to Order to Show Cause 20.) At the Show Cause Hearing, Thomas argued that he was not seeking to upset the state court judgment. (Show Cause Hr'g Tr. 37:15–17.) Instead, he said he was attempting to "clarif[y]" the "chain of assignments" before the foreclosure sale. (*Id.* at 37:11–14.) That explanation notwithstanding, his Motion explicitly requests an injunction halting the foreclosure sale. (Mot. for Inj. Rel. 15.)

This is just more nonsense and is a patently transparent attempt to circumvent the state court's foreclosure judgment. "In order to prevail on a foreclosure claim in Pennsylvania, a plaintiff must establish, among other elements, 'the parties to and date of the mortgage, and of any assignments.' 231 Pa. Code § 1147(a)(1) Moreover, a foreclosure judgment necessarily includes a finding that the mortgage was valid, and that the mortgage holder who is the plaintiff in a foreclosure action has standing to foreclose." *Williford*, 2018 WL 451644, at \*3. In other words, entering summary judgment required the state court to recognize the validity of Deutsche Bank's interest in the mortgage and the validity of the chain of assignments between it and Decision One Mortgage. *See id.* "[I]f [Deutsche Bank] had been unable to meet its burden of proof on that issue, it would not have been entitled to summary judgment." *Id.* Given the state court's conclusion in the foreclosure action, Taggart's claims clearly lack merit.

**\*16** Thomas's argument about irreparable harm is similarly meritless. He contends that if the Court does not grant the Motion, Taggart risks losing his home in a foreclosure sale. This argument reveals Taggart's strategy of collaterally attacking the state court foreclosure judgment in this case. Taggart and Thomas have appealed the state court's foreclosure judgment and, if they are successful, will avoid the harm cited in the Motion for Injunctive Relief. That avenue for relief obviates the need for the Court's intervention.

Thomas has tried this before. In *Bounasissi v. New York Life Ins. And Annuity Corp.*, No. 15-cv-7585, 2016 WL 852483, at \*1–2 (D.N.J. Mar. 4, 2016), he sought emergency injunctive relief to stay his client's imminent eviction pursuant to a two-year-old foreclosure judgment. Thomas relied on one of his go-to arguments to justify that motion—he claimed he

could not assert the arguments raised in federal court in the foreclosure action. *Id.* at \*2. He recycles that argument here, saying he could not have raised his quiet title claims in the foreclosure action. But his legal theory supporting the quiet title claims here mirror those in the state court foreclosure action—he says Deutsche Bank lacks a valid claim to the mortgage and that the assignments of the mortgage were invalid. By asking the Court to address these arguments on an emergency basis, Thomas is effectively seeking expedited appellate review of the state court foreclosure judgment in federal court. [18] The Court will not entertain such requests and, because this is not Thomas's first rodeo, the Court concludes that Thomas violated Rule 11(b)(1) by bringing this Motion for the improper purposes of collaterally attacking a state court judgment and increasing the cost of litigation.

### G

In Count 2 of the Amended Complaint, Thomas raises a quiet title claim against MERS. (Am. Compl. ¶¶ 216–220.) At no point in the Amended Complaint does he acknowledge or grapple with the fact that our Court rejected that exact claim when he raised it in *Taggart v. Morgan Stanley ABS Cap. I Inc.*, No. 16-cv-62, 2016 WL 4076818, at \*5 (E.D. Pa. Aug. 1, 2016). In that case, Judge Smith concluded: "MERS ... do[es] not have any claim[ ] of any interest in the property at all, and thus a quiet title action against [it] is inappropriate. MERS's interest in the property ended when it assigned that interest to Deutsche Bank, and MERS has never claimed an interest subsequent to that assignment." *Id.* The Court dismissed the claim without prejudice. When asked about the 2016 case at oral argument, Thomas could not remember whether he had been involved, then provided non-responsive answers regarding the similarities between Count Two and the claim against MERS in that case. (April 22 Hr'g Tr. 36:19–38:13.) In his response to the Order to Show Cause, Thomas correctly notes that the court dismissed the claim without prejudice in 2016, which does not bar him from re-filing the claim. But Thomas fails to explain how the claim is any different this time around. At the Show Cause Hearing, he argued that deposition testimony in the state court foreclosure case supported Taggart's position that MERS lacked "authority to create and record this assignment of mortgage." (Show Cause Hr'g Tr. 7:23–25.) But Thomas's answer did nothing to address Judge Smith's conclusion that MERS, regardless of whether it had authority to assign the mortgage, "has never claimed an interest subsequent to that assignment." *Taggart,* 2016 WL 4076818, at \*5. So, although the 2016

dismissal does not preclude this claim, Thomas's decision to re-file it without any factual support—just like in 2016—runs afoul of Rules 11(b)(1) and (2). He recycled this claim, barred by existing law, to harass, cause unnecessary delay and needlessly increase the cost of litigation.

### H

**\*17** Next, the Court ordered Thomas to show cause why his failure to plead facts supporting Counts 1 through 10 was not sanctionable under Rule 11(b)(1) and (2) in light of repeated explanations from our Court and the Third Circuit regarding the requirements for pleading quiet title and slander of title claims. These Courts have schooled Thomas on several occasions regarding what it takes to adequately plead a claim for relief for quiet title and slander of title. He nonetheless continues to advance deficient claims for an improper purpose.

In each of Counts 1 through 5, Thomas explicitly requests that the Court order Defendants to proffer evidence regarding ownership of his property. But our Court has explained to Thomas that the quiet title statute "is not a license to force any person somewhat associated with a property transaction to answer a series of requests for admissions and produce documents." *Taggart,* 2016 WL 4076818, at \*4. And, as explained in Section III.D, Courts in this Circuit have previously dismissed Thomas's slander of title claims for failing to allege facts supporting them. *See, e.g., Taggart,* 2016 WL 4076818, at \*5; *Taggart,* 723 F. App'x at 129. At the Show Cause Hearing, Thomas argued that, although Deutsche Bank is the only Defendant claiming an interest in his property, Taggart could pursue quiet title claims against the other Defendants to clean up the "chain of title." (Show Cause Hr'g Tr. 9:24–10:11.) But in affirming dismissal of quiet title claims in one of Taggart's prior suits, the Third Circuit explained that—to maintain a quiet title claim—Taggart must allege "specific facts" showing defendants "lay[ ] claim to his property." *Taggart,* 723 F. App'x at 129. Thomas also admitted that the Amended Complaint does not plead facts establishing malice for Taggart's slander of title claims. (Show Cause Hr'g Tr. 19:23–25.) Malice, as the Third Circuit recently told Thomas and Taggart, is "a necessary element of slander of title." *Taggart,* 723 F. App'x at 129.

Thomas's repeated errors suggest more than excusable mistake or neglect. He has established a pattern of disregarding where it suits him unfavorable rulings or

Case 3:26-cv-00879-JES-DFB    Document 11-2    Filed 05/18/26    Page 55 of 62

Taggart v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2021)

explanations from courts that contradict his erroneous view of the law. Counts 1 through 10 violate Rules 11(b)(1) and (2) because Thomas pled these claims for an improper purpose, they lack factual support and they have no basis in existing law.

## I

Thomas asserts several claims in the Amended Complaint that are clearly barred by applicable statutes of limitations. Notably, he supports the breach of contract claim in Count 11 with conduct that occurred in 2010. (Am. Compl. ¶ 280(a)–(h).) He fails to recognize that this conduct occurred six years beyond the four-year statute of limitations and does not attempt to explain why any form of tolling could save these portions of his claim. Similarly, the FDCPA claim in Count 16 is based on a document from 2018, but the statute of limitations for FDCPA violations is one year. *See Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019) (citing 15 U.S.C. § 1692k(d)).

In his Response to the Show Cause Order, Thomas cites 42 Pa.C.S. § 5529 as providing the applicable statute of limitations for his breach of contract claim. Section 5529 says there is a twenty-year statute of limitations in Pennsylvania for execution of a judgment against personal property. It says nothing about breach of contract claims. When asked at the Show Cause Hearing why he cited that statute, Thomas said, "I can't tell you why we relied on that specific statute." (Show Cause Hr'g Tr. 23:6–7.) And when asked about his FDCPA claim at the Show Cause Hearing, Thomas erroneously said the statute of limitations for FDCPA claims is four years. (*Id.* at 32:17.)

**\*18** Thomas's inclusion of these time-barred claims is illustrative of his broader approach to litigation—throwing everything at the wall to see what sticks. These claims violate Rules 11(b)(1) and (2) because they have no basis in existing law and the Court can conclude only that Thomas pled them for an improper purpose.

## J

Finally, the Court also ordered Thomas to show cause why his repeated allegation that Deutsche Bank is not the owner of the mortgage and note based on a competing claim from U.S. Bank does not violate Rules 11(b)(1) and (3). In

Paragraphs 70 and 135 of the Amended Complaint, Taggart attacks Deutsche Bank's ability to foreclose on the Heron Road property based on a claim that U.S. Bank made about ownership of the mortgage and note in a prior case many years ago. But Thomas fails to mention at any point that our Court already addressed this issue in *Taggart v. Morgan Stanley ABS Cap. I Inc.*, No. 16-cv-62, another case involving the Heron Road property in which he served as Taggart's lawyer. There, the Court allowed Taggart's quiet title claims against Deutsche Bank and U.S. Bank to proceed to discovery based on the same allegations Thomas raises now. *Taggart v. Morgan Stanley ABS Cap. I Inc.*, No. 16-cv-62, 2016 WL 4076818, at \*5 (E.D. Pa. Aug. 1, 2016). But as Thomas knows, when discovery showed that U.S. Bank never had a valid interest in the note and mortgage, the court dismissed those claims without prejudice for lack of subject matter jurisdiction. *See Taggart v. Morgan Stanley ABS Cap. I Inc.*, No. 16-cv-62, ECF 55. Because the court dismissed those claims without prejudice and did not make any explicit on-the-record findings regarding this allegation, the Court will not impose sanctions on Thomas for including it in the Amended Complaint.

## K

In determining the appropriate sanctions, "the Court seeks the least significant sanction that will correct or deter similar conduct from Thomas in the future." *Jacovetti Law, P.C.*, 2020 WL 1491320, at \*5. The Court is mindful of Thomas's prior conduct and the resulting sanctions but is not punishing him for those prior violations. "However, ... Thomas's failure to change his ways[ ] demonstrate[s] that harsher sanctions are necessary to make the point." *Id.*

## 1

Thomas's conduct has undoubtedly led to inflated legal bills for his opponents. His Amended Complaint is difficult to follow and does not give his opponents clear notice of the claims against them. Considering the totality of his transgressions—lying to the Court, repeatedly missing deadlines, filing a baseless motion, advancing frivolous claims and exercising no diligence in crafting his pleadings—a $2,500 sanction to be paid into the Court's registry is appropriate. This is the Court's best effort at crafting a fair monetary penalty that will hopefully deter Thomas from continuing to practice law this way.

Case 3:26-cv-00879-JES-DFB    Document 11-2    Filed 05/18/26    Page 56 of 62

Taggart v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2021)

2

Thomas's lack of candor to the Court, his inability to craft a coherent pleading, his decision to seek emergency injunctive relief, his failure to adequately investigate the merits of Taggart's case and his refusal to adhere to the Court's deadlines "call[ ] into question his competence to practice law." *Jacovetti Law, P.C.*, 2020 WL 1491320, at *5. Thomas must provide a copy of this Memorandum, the corresponding Order and the transcript of the Show Cause Hearing to the disciplinary committee for every state bar and every federal court to which he is admitted. He shall also provide these materials to all judges presiding over any pending proceeding in which he is involved—notably Judge Hillman in the District of New Jersey who just last year ordered Thomas to show cause why he should not be referred to the Chief Judge for discipline. *Edwards v. Wells Fargo Bank N.A.*, No. 19-cv-14409, ECF 7. A hearing on that order is currently scheduled for June 15. *Id.*, ECF 23. Thomas must then file a sworn statement and proof of delivery of these materials with the Court.

**\*19** The Court will also forward this Memorandum Opinion and the accompanying Order to the Court's Disciplinary Committee for its review. [19]

VI

When the Third Circuit sanctioned Thomas earlier this year, it rightly observed that "[t]he practice of law is challenging, and even the best lawyers make mistakes from time to time." *Conboy*, 992 F.3d at 158. The Court is privileged to have practice before it diligent, honest, hard-working and talented attorneys who advocate zealously and in good faith for their clients. Joshua Thomas is not one of them.

The Court does not levy sanctions lightly—even against a lawyer like Thomas. The Court is mindful of the effect sanctions may have beyond their immediate impact. Plus, imposing sanctions involves several procedural steps and demands extraordinary time, effort and resources. This explains why bad conduct in the courts can go unchecked. Lawyers, their clients and courts often decide that moving to sanction or sanctioning someone just isn't worth the trouble. In this case it is.

An appropriate Order follows.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 2255875

---

**Footnotes**

1    As the Court explained in a recent case involving one of Taggart's other mortgages, most of his suits are naked attempts to avoid paying those obligations. *Taggart v. Saltz*, No. 20-1638, 2020 WL 5943728, at *1 n.1 (E.D. Pa. Oct. 7, 2020). He has not received a favorable judgment in any of his actions and has been warned that his cases "are an abuse of the judicial process." *Taggart v. Wells Fargo Bank, N.A., et al.*, No. 12-3177, 2013 WL 3009732, at *3 (E.D. Pa. June 18, 2013); *see also Taggart v. Harrison*, No. 07-3645; *Taggart v. Chase Bank USA, N.A., et al.*, No. 09-1533; *Taggart v. Norwest Mortgage, Inc., et al.*, No. 09-1281; *Taggart v. Greenpoint Mortgage Funding, Inc., et al.*, No. 09-3416; *Taggart v. Greenpoint Mortgage Funding, Inc., et al.*, No. 09-3417; *Taggart v. Chase Bank USA, N.A.*, No. 09-3761; *Taggart v. Wells Fargo Home Mortgage, Inc., et al.*, No. 10-843; *Taggart v. BAC Home Loans Servicing, LP, et al.*, No. 10-1223; *GMAC Mortgage LLC, et al. v. Taggart*, No. 10-2393; *Wells Fargo Bank, N.A. v. Taggart*, No. 10-2657; *Taggart v. Franconia Township, et al.*, No. 10-2725; *Deutsche Bank National Trust Co. v. Taggart*, No. 11-4668; *Taggart v. GMAC Mortgage LLC, et al.*, No. 12-415; *Taggart v. County of Montgomery, et al.*, No. 12-1913; *Taggart v. Wells Fargo Bank, N.A., et al.*, No. 12-2359; *Taggart v. GMAC Mortgage LLC, et al.*, No. 12-4077; *Taggart v. Deutsche Bank Nat'l Co., et al.*, No. 12-4455; *Taggart v. United States*, No. 15-mc-255; *Taggart v. Bank of New York Mellon, et al.*, No. 15-2985; *Taggart v. Morgan Stanley ABS Capital I Inc. Trust, et al.*, No. 16-062; *Taggart v. Wells Fargo Bank, N.A., et al.*, No. 16-063; *Taggart v. United States Dep't of Justice, et al.*, No. 16-4040; *Taggart*

Case 3:26-cv-00879-JES-DFB   Document 11-2   Filed 05/18/26   Page 57 of 62

Taggart v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2021)

*v. United States Dep't of Justice*, No. 17-3210; *Taggart v. Montgomery County Court of Common Pleas, et al.*, No. 18-1409; *Taggart v. New Century Financial Services, Inc., et al.*, No. 20-4261.

2       This argument is one of Taggart's go-to tactics for avoiding paying his mortgages. He consistently challenges the validity of his mortgages or their assignments after a mortgagee or servicer "ceases to exist" as a result of a name change or acquisition by another financial institution. *See Taggart v. United States Dep't of Justice*, No. 17-cv-3210, 2018 WL 1911342, at *1 (E.D. Pa. Apr. 23, 2018).

3       The Court takes judicial notice of the state court order attached to Defendants' letter. *See Schafer v. Decision One Mortg. Corp.*, No. 08-cv-5653, 2009 WL 1532048, at *3 (E.D. Pa. May 29, 2009) ("[A] court may take judicial notice of the record from a state court proceeding and consider it on a motion to dismiss.").

4       Although the Court dismisses Taggart's claims for other reasons, his incoherent pleading likely violates Rule 8 of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 8 (pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief").

5       Thomas attributed both untimely filings to "calendaring error[s]." (April 22 Hr'g Tr. 108:2–5, 109:3–5, ECF 50.)

6       In contesting the foreclosure summary judgment, Taggart argued the trial court erred in determining Deutsche Bank "evince[d] a proper ownership of the note and mortgage, chain of ownership of the mortgage and note, legal successor in interest to the mortgage and note, or [that it] possess[es] a valid and enforceable note and mortgage." *Deutsche Bank v. Taggart*, Bucks Cty. CCP, No. 2018-05654, "Defendant/Appellant's Concise Statement of Matters Complained of on Appeal," Dkt. No. 158. Similarly, he argued Deutsche Bank failed "to comply with pre-foreclosure notice(s)." *Deutsche Bank v. Taggart*, Bucks Cty. CCP, No. 2018-05654, "Defendant/Appellant's Concise Statement of Matters Complained of on Appeal Regarding Order of the Court to File a 1925 Statement Pertaining to the Order Granting Motion for Summary Judgment on March 15, 2021," Dkt. No. 159. The state court rejected those contentions. *Deutsche Bank v. Taggart*, Bucks Cty. CCP, No. 2018-05654, Opinion, Dkt. No. 161.

Taggart's Amended Complaint, on its own, bolsters the Court's conclusion. For example, in pleading his breach of contract claim, Taggart alleges that, "As a result of Deutsche Bank's Actions, Defendant [sic] has suffered economic loss and emotional stress by having to defend a lawsuit which was filed in breach of contractual obligations." (Am. Compl. ¶ 281.) He repeats this allegation, again referring to himself as "Defendant," in his failure to comply with mortgage protections claims. (*Id.* at ¶¶ 285, 289, 293.)

7       Our Court rejected Taggart's nearly identical claim against MERS in 2016. *Taggart*, 2016 WL 4076818, at *5 ("MERS ... do[es] not have any claims of any interest in the property at all, and thus a quiet title action against [it] is inappropriate. MERS's interest in the property ended when it assigned that interest to Deutsche Bank, and MERS has never claimed an interest subsequent to that assignment."). Moreover, *res judicata* likely bars this claim because it is based on Taggart's theory that MERS's assignment of the mortgage was invalid, an issue essential to the state court's summary judgment. *See Williford*, 2018 WL 451644, at *3 ("The determination that the assignments were valid was also essential to the mortgage judgment.").

8       At oral argument, the Court gave Thomas an opportunity to identify facts in the Amended Complaint supporting these claims. (April 22 Hr'g Tr. 40:1–4, 15–18.) He could not do so. *See, e.g.*, (*id.* at 45:21–23, 46:9–48:13). If counsel, who purportedly drafted the Amended Complaint, struggled to identify relevant factual allegations supporting his claims, one can imagine the Court's difficulty.

9       The Court also asked Thomas to identify facts supporting these claims at oral argument. (April 22 Hr'g Tr. 74:22–25.) Again, he could not. *See e.g.*, (*id.* at 78:20–21, 79:15–20) (Thomas identified allegations about allegedly false state court testimony from SLS employees).

Case 3:26-cv-00879-JES-DFB    Document 11-2    Filed 05/18/26    Page 58 of 62

Taggart v. Deutsche Bank National Trust Company, Not Reported in Fed. Supp. (2021)

"In deciding motions under Rule 12(b)(6), courts may consider documents integral to or explicitly relied upon in the complaint or any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 (3d Cir. 2016) (internal quotations and citations omitted). Here, the documents Defendants provide are integral to Taggart's Amended Complaint because his claims depend on whether he submitted a loss mitigation application and whether Defendants responded appropriately.

Counts 14 and 15 both assert claims against Stern & Eisenberg for failure to comply with mortgage protections. In Count 15, Taggart adds one paragraph purporting to assert a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, but the other paragraphs of Count 15 mirror Count 14.

Again, Thomas ought to know better by now. In 2016, another court in this Circuit dismissed similar claims under 12 C.F.R. § 1024.2 because Thomas tried raising them against non-servicers. *Bounasissi v. New York Life Ins. And Annuity Corp.*, No. 15-cv-7585, 2016 WL 4697333, at *2 (D.N.J. Sept. 6, 2016).

Again, Taggart and Thomas know all of this already. In 2017, the Court laid out this standard and rejected Taggart's fraud on the court claims as conclusory. *Taggart v. United States Dep't of Justice*, No. 16-cv-4040, 2017 WL 319062, at *9 (E.D. Pa. Jan. 20, 2017).

One would think that being taken to task in a precedential opinion from the Third Circuit Court of Appeals would make an impression on a lawyer who regularly practices here. Not so with Thomas. When confronted for employing similar cut and paste tactics here and being asked if Judge Hardiman reacted casually to such a practice, Thomas said, "I don't know Judge Hardiman, who you're referencing, Your Honor." (April 22 Hr'g Tr. 101:17–102:2.)

The day after oral argument, the Court learned from the Pennsylvania Office of Disciplinary Counsel that Thomas remained administratively suspended because he had not submitted proof that he completed the required CLEs or paid three late fees.

At the Show Cause Hearing, Thomas explained that he erroneously set up 21-day deadlines for responding to these Motions. (Show Cause Hr'g Tr. 43:17–21.) This mistake is inexcusable given that our Court recently admonished Thomas for flouting deadlines. *See Jacovetti Law, P.C.*, 2020 WL 1491320, at *1–2, 5–7.

When the Court asked Thomas at oral argument whether he had copy and pasted paragraphs from his pleadings in state court into Taggart's Amended Complaint, he denied doing so. *See, e.g.*, (April 22 Hr'g Tr. 103:7–13, ECF 50). A comparison of his state court pleadings and the Amended Complaint reveals several identical paragraphs. *Compare, e.g.*, (Am. Compl. ¶ 118) *with* (Deutsche Bank Mot. to Dism., Exh. 2 at 21–22, ECF 25-4). The Court ordered Thomas to show cause why he should not be sanctioned for lying to the Court about copy and pasting these paragraphs from the state court pleadings into his Amended Complaint. In his Response and at the Show Cause Hearing, Thomas admitted to recycling these paragraphs. (Resp. to Order to Show Cause 21; Show Cause Hr'g Tr. 52:1–4.)

At the Show Cause Hearing, Thomas erroneously argued that his Motion could not be construed as a collateral attack on the state court judgment because the "judgment [ ] hadn't been filed when that [M]otion was filed." (Show Cause Hr'g Tr. 37:15–17.) The state court entered summary judgment on March 15, 2021. Thomas moved for injunctive relief two weeks later on April 1.

Had this case not been filed in state court and removed to federal court, the Court would have considered issuing a pre-filing injunction against Thomas.

**7**

2009 WL 2448003
Only the Westlaw citation is currently available.
United States District Court,
W.D. Pennsylvania.

Amber M. YOUNG, Plaintiff,
v.
CENTERVILLE CLINIC, INC., Defendant.

Civil Action No. 09–325.
|
Aug. 10, 2009.

West KeySummary

1    **Civil Rights** 🗝 Pleading

An employee failed to state a Title VII claim against her employer. The amended complaint pled facts in a chaotic fashion, often times switching back and forth between facts and events allegedly supporting a religious discrimination claim, and facts and events allegedly supporting a sex discrimination claim. Further, in the amended complaint, each count alleged at least three different theories of liability, without ever distinguishing the facts that support each theory. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fed.Rules Civ.Proc.Rules 8, 10, 28 U.S.C.A.

**Attorneys and Law Firms**

Lois E. Glanby, McMurray, PA, for Plaintiff.

Joseph M. Yablonski, Yablonski, Costello & Leckie, Washington, PA, Kurt A. Miller, Dennis J. Buffone, Thorp, Reed & Armstrong LLP, Pittsburgh, PA, for Defendant.

*MEMORANDUM OPINION ON MOTION TO DISMISS AMENDED COMPLAINT*

LENIHAN, United States Magistrate Judge.

**I. STATEMENT OF RELEVANT FACTS & PROCEDURAL HISTORY**

 **\*1**  Plaintiff, Amber Young (hereinafter "Plaintiff") brought suit against Defendant, Centerville Clinics, Inc. (hereinafter "Defendant") alleging, *inter alia,* employment harassment and discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1991 (hereinafter "Title VII") and the Pennsylvania Human Relations Act (hereinafter "PHRA"). Plaintiff is a former employee of Defendant. (Complaint, Doc. No. 1 at ¶ 6) (hereinafter "Doc. No. 1 at ¶ ____.") Plaintiff alleges that, beginning in 2004, she was subject to continuous and ongoing discrimination due to her sex/ gender, race/ reverse race, religion, and pregnancy status/ perceived disability. (Doc. No. 1 at ¶ 12.) Plaintiff further alleges that her co-workers and managers were both aware of the discrimination and participated in the discrimination. (Doc. No. 1 at ¶ 12(b).) According to the Complaint, beginning in 2007, Plaintiff's supervisor Vicki Murray (hereinafter "Murray") began systematically discriminating against Plaintiff. Plaintiff alleges that Murray disfavored Plaintiff while favoring another worker (an African American male named Reuben), allowed Reuben to sexually harass Plaintiff, harassed Plaintiff for being an Atheist, refused Plaintiff's requests to move to a different department, required Plaintiff to work with Reuben, denied Plaintiff's request for a different assignment of clients, and denied Plaintiff's request for additional pregnancy leave. (Doc. No. 1 at ¶ 12.) Plaintiff's employment with Defendant was terminated in late 2008. (Doc. No. 1 at ¶ 12(nn).) As a result of the alleged discrimination and harassment, Plaintiff avers that she suffers from mental anguish, depression, emotional strain, loss of sleep, severe anxiety, humiliation, and loss of income and benefits. (Doc. No 1 at ¶ 14.)

In response to the original complaint, Defendant filed a Motion to Dismiss for failure to comply with the Federal Rules of Civil Procedure. (Doc, No. 3.) Plaintiff then filed an Amended Complaint, in which Plaintiff alleged four counts of harassment and discrimination under Title VII, one count of retaliation under Title VII, and one count of employment discrimination under the PHRA. (Doc. No. 7.) In response to the Amended Complaint, Defendant filed a second Motion to Dismiss for failure to comply with the Federal Rules of Civil Procedure. (Doc. No. 12.) In the second Motion to Dismiss, Defendant requested that the Court dismiss the Amended Complaint without prejudice and order Plaintiff to file a Second Amended Complaint that meets the pleading requirements of the federal rules. A brief in opposition was filed on July 30, 2009.

## II. ANALYSIS

### A. Plaintiff's Amended Complaint Fails to Comply with Rules 8(a) and 8(d)(1) of the Federal Rules of Civil Procedure

Rule 8(a) (2) of the FRCP provides that a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Rule 8(d)(1) of the FRCP provides that each allegation in a pleading "must be simple, concise, and direct." Fed.R.Civ.P. 8(d)(1). The purpose of Rule 8 is to prevent complaints that are ambiguous or vague enough to impede the defendant's ability to form a responsive pleading. See Schaedler v. Reading Eagle Publications, Inc., 370 F.2d 795, 798 (3d. Cir.1967). While the pleading requirements of Rule 8 are liberally construed, the district courts in this and other circuits have consistently held that disorganized, needlessly long, and highly repetitious complaints that are not organized into plain statements of the claim fail to satisfy Rule 8. See Parker v. Learn the Skills Corp., No. 03–6936, 2004 WL 2384993, at *2 (E.D.Pa. October 25, 2004) (court noted that while excessive length alone is not a sufficient reason to dismiss a complaint, when accompanied by a lack of clarity, a dismissal is proper); Burton v. Peartree, 326 F.Supp. 755, 758–59 (E.D.Pa.1971) (court found that "a lengthy rambling complaint which contains little more than demands, charges and conclusions ... is not a short and plain statement of the case and flagrantly violates Fed.R.Civ.P"); Nagel v. ADM Investor Servs., 995 F.Supp. 837, 845 (N.D.Ill.1998) (court noted that "[U]nder Rule 8, plaintiffs must present a complaint with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search of what it is the plaintiff asserts."); Choate v. United States, 413 F.Supp. 475, 478 (N.D.Okla.1976) (court found that a disorganized, unclear complaint "puts an unjustifiable burden upon the Court and the defendants to determine whether somewhere, 'tucked' betwixt plaintiff's arguments, conclusions and general dissertations, facts sufficient to support a cause of action have been stated ...").

*2 In the case at hand, Plaintiff's original Complaint failed to meet the requirements of Rules 8(a) and 8(d)(1). In its first Motion to Dismiss (hereinafter "MD 1"), Defendant noted that the original Complaint "haphazardly" listed 45 or more paragraphs and subparagraphs of repetitive and unclear facts that were meant to support a list of claims including harassment, retaliation, and disparate treatment based on sex, race, reverse-race, pregnancy, disability, perceived disability, religion and union activity. (Doc. No, 3 at ¶ 3.) After the Court ordered Plaintiff to either amend the Complaint, or to respond to Defendant's MD 1, Plaintiff filed an Amended Complaint, which Defendant contends also fails to meet the requirements of Rules 8(a) and 8(d)(1). Defendant, therefore, moved to dismiss the Amended Complaint in its second Motion to Dismiss (hereinafter "MD 2"). While the Amended Complaint is slightly more organized, and has divided the original paragraphs and subparagraphs into 6 counts, there is still no "short and plain statement of the claim ..." showing that Plaintiff is entitled to relief. See Fed.R.Civ.P. 8(a)(2). Rather, the Amended Complaint contains over 125 paragraphs and subparagraphs, many of which are repeated haphazardly under counts for which the repeated facts serve as irrelevant. Further, the Amended Complaint lacks "simple, concise, and direct" facts that support any of the claims made by Plaintiff. See Fed.R.Civ.P. 8(d)(1). Numerous paragraphs in the Amended Complaint are simply repeated under each count without purpose or specificity. See, e.g., Am. Comp. ¶¶ 12(n), 12(o), 17(v), 17(w), 17(aa), 17(bb), 22(k), 22(1), 27(1), 27(m) (note: these are all the same paragraphs, re-lettered, renumbered and repeated). Further, several of the paragraphs in each count are in no way related to the titled subject of the count. See, e.g., Am. Comp. ¶¶ 17(t), 17(x), 17(y), 22(l), 22(j), 22(m), 27(h), 27(l).

Plaintiff is not proceeding *pro se,* but is represented by counsel who is or should be familiar with the pleading requirements of Rule 8. Copying and pasting the paragraphs and subparagraphs from the original Complaint into 6 different counts does not solve the original pleading deficiencies, and does not clarify which facts actually apply to which claims. The Amended Complaint, much like the original complaint, creates an undue burden for the Court and the Defendant to sift through the disorganized and unclear facts to determine whether there are any sufficient facts to support any of the claims being made. See Choate, 413 F.Supp. at 478. Accordingly, the Court finds that the Amended Complaint fails to comply with Fed.R.Civ.P. 8(a) and (d)(1).

### B. Plaintiff's Amended Complaint Fails to Comply with Rule 10(b) of the Federal Rules of Civil Procedure

Rule 10(b) of the Federal Rules of Civil Procedure requires that all claims must be stated in numbered paragraphs and that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count or defense." The purpose of Rule 10 is to create clarity in pleadings, which allows a defendant and the Court

Case 3:26-cv-00879-JFS-DFB    Document 11-2    Filed 05/18/26    Page 62 of 62

to determine whether there are sufficient facts to support a claim entitling a plaintiff to relief.

**\*3** In the case at hand, Plaintiff's original Complaint failed to meet the requirements of 10(b) of the FRCP. In its MD 1, Defendant noted that the Complaint "haphazardly" listed 45 or more paragraphs and subparagraphs of repetitive and unclear facts that were meant to support a list of claims, and that these paragraphs were not sorted into different counts. (Doc. No. 3 at ¶ 3.) Further, Defendant noted that Plaintiff alleges at least three different theories of liability, including retaliation, harassment, and disparate treatment, without stating which facts support each theory, or which theory supports each claim. (Doc. No. 3 at ¶ 4.) After the Court ordered Plaintiff to either amend the Complaint, or to respond to Defendant's MD 1, Plaintiff filed an Amended Complaint which Defendant contends also fails to meet the requirements of Rules 10(b). Accordingly, Defendant filed its MD 2 seeking dismissal of the Amended Complaint. While the Amended Complaint is divided into 6 different counts, the facts are still pled in a chaotic fashion, often times switching back and forth between facts and events "supporting", for instance, a religious discrimination claim, and facts and events "supporting" a sex discrimination claim. Further, in the Amended Complaint, each count alleges at least three different theories of liability, without ever distinguishing the facts that support each theory.

Again, Plaintiff is not proceeding *pro se,* but is represented by counsel who is or should be familiar with the pleading requirements of Rule 10 of the FRCP. The Amended Complaint, much like the original complaint, creates an undue burden for the Court and the Defendants, as the number of claims, the number of theories of liability, and even the number of facts supporting each claim are completely unclear, Accordingly, the Court finds that the Amended Complaint does not meet the pleading requirements of Rule 10.

### III. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss will be granted without prejudice for Plaintiff to file a Second Amended Complaint. An appropriate Order will follow.

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 2448003

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.